NATIONAL MUTUAL INSURANCE COMPANY, Appellant,

v.

Steven M. EWARD, Darrell Jones and Jack A. McClees Painting, Appellees.

No. 29A04-8611-CV-336.

Court of Appeals of Indiana, Fourth District.

Dec. 28, 1987.

Robert A. Smith, Jane Magnus D'Alesandro, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for appellant.

Stephen Gerald Gray, Indianapolis, for appellees.

MILLER, Presiding Judge.

Darrell D. Jones (Jones) sued Steven M. Eward (Eward) to recover for injuries he sustained when he was struck by a Chevrolet van that Eward was driving. National Mutual Insurance Company (National), the insurer of the van, then filed a complaint for a declaratory judgment against Eward, asking the court to determine (1) whether Eward was an insured under its automobile liability policy issued to Jack A. McClees Painting (McClees), (2) whether Jones's injuries resulted from an "accident" as that term was defined in the policy, and (3) whether it was obligated to defend and indemnify Eward in Jones's action against him. When Eward did not answer the complaint, National obtained a default judgment. Later, however, Jones moved to have the default judgment set aside and to intervene in the action, and the trial court granted his motions. The trial court allowed National to amend its complaint to add McClees, its insured, as a defendant. After trial, the trial court found that Eward was an insured because he had implied permission to use McClees's van, that Jones's injuries did result from an accident, and that National was obligated to defend and to indemnify Eward. National now appeals alleging the trial court erred by (1) finding Eward was an insured, (2) finding Jones's injuries resulted from an accident, and (3) denying National's motion under Trial Rule 8(D) to have all matters deemed admitted as to Jones because Jones did not file an answer to its amended complaint.

We affirm.

### FACTS

Jones was a painting foreman for McClees. When Jones was offered another job in late summer, 1984, McClees gave him the use of a company van as an inducement to stay on. At that time McClees did not place any restrictions on how Jones could use the van, and Jones agreed to take care of minor repairs. Jones drove the van to and from work, used it for dates, and considered it his own since he had no other automobile. He paid for the gas, and even paid for a tire and repairs to the radiator.

Later, McClees told Jones he did not want anyone to drink alcohol and drive the van. After stating that restriction, however, McClees took the entire work crew out for food and alcoholic drinks. McClees knew that on occasion Jones and another crew member would stop for beer after work, and the van was Jones's only vehicle.

Jones was out drinking alcohol with Jack Eward, the brother of Steven Eward, on September 28, 1984 and during the early morning hours of the next day. Steven Eward joined them, and because he was the least intoxicated of the three, Jones asked him to drive the van. When they left a

tavern Eward again drove the van. Realizing that he had left Jones behind on the sidewalk, he backed up the van to allow Jones to get in, and the van struck Jones.

## DECISION

National first contends the trial court erred in finding Eward had implied permission to drive the van and was therefore an insured under its policy because McClees, the named insured, had never met Eward. It was Jones, instead, who gave permission to Eward. National cites the case of *Standard Mutual Insurance Company v. Pavelka* (S.D.Ind.1983) 580 F.Supp. 224, as authority for its proposition that to be an insured Eward must have had *express* permission from McClees, not Jones. National points out that its policy contains the following limitation on coverage:

"D. WHO IS INSURED

1. *You* are *insured* for any covered auto.

2. Anyone else is an insured while using with *your* permission a covered *auto you own*, hire, or borrow.... [Emphasis in original.]"

The policy also defines "you" and "your" as "the person or organization shown as the named insured...." National states its limitation is similar to one that was construed in *Pavelka*, and, because the *Pavelka* court found there was no implied permission to friends of the original permittee, the trial court erred in concluding Eward, a second permittee, had implied permission. We disagree.

In *Pavelka*, an insurance company also sought a declaratory judgment to ascertain its liability under a policy, but the facts in *Pavelka* are quite different from those in this case. There, the named insured gave permission to his son, but explicitly told him he could not allow anyone else to drive. The son, however, took several friends to a party and left the keys in the unlocked car. Without the son's knowledge, two of his friends took the car and were involved in a wreck. The driver was killed and the passenger was injured. The insurance company claimed the driver and the passenger were not insured, but the defendants argued that coverage existed via implied consent because the son had allowed the driver and another to use the car previously.

The *Pavelka* court examined the policy which, in part, provided:

"Persons Insured—The following are insured under Part 1

(a) With respect to the owned automobile,

(1) the named insured and any resident of the same household

(2) Any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission."

The court noted that Indiana law does not require insurance policies to cover the liability of permissive users. Thus, because the policy covered the named insured and any other person using the vehicle with his permission, the policy was broader than required.[1] Still, the court observed that only the named insured could give permission. To say the son's friends had implied permission would give broader coverage than was allowed in the contract. The court said it must acknowledge the limitation on coverage because the son's friends had neither the express *nor* the implied permission of the named insured; in fact, he expressly forbade his son to allow anyone else to drive.

Here, however, Eward contends that the trial court correctly found he was insured because he had the implied consent

---

1. IND.CODE 27–1–13–7, in relevant part, requires:

"... [n]o such policy shall be issued or delivered in this state to the owner of a motor vehicle, by any domestic or foreign corporation, insurance underwriters, association or other insurer authorized to do business in this state, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, *express* or *implied*, of such owner.... [Emphasis supplied.]"

of McClees, and we agree. Eward directs our attention to the case of *Arnold v. State Farm Mutual Automobile Ins. Co.*, (7th Cir.1958) 260 F.2d 161, in which the court construed an omnibus clause that was almost identical to the one in this case. The *Arnold* court noted that, under Indiana law, a policy that contains an omnibus clause extends coverage to a permittee of the owner. Further, the court observed that the supreme court had held coverage was properly extended to a second permittee under an omnibus clause in a case in which there was implied consent by the owner to a friend of the original permittee. *Id.* (citing *American Employers' Ins. Co. v. Cornell* (1948) 225 Ind. 559, 76 N.E.2d 562.) In *Cornell*, as here, the omnibus clause did not require that the permission of the named insured be expressly given. The *Cornell* court found that express permission was unnecessary, and implied permission was sufficient to bring a second permittee within the protection of the policy. *Id.* In *Arnold* and *Cornell*, as here, the insured did not expressly or impliedly prohibit the first permittee from allowing another to drive, as was done in *Pavelka*. Here, McClees initially placed no restrictions on how Jones could use the van. Therefore, under Indiana law, the trial court could properly conclude Eward had implied permission, and that he came under the protection of the policy.

National argues, too, that for a second permittee to come within protection, he must have been using the vehicle for the benefit of the first permittee, and the use must have been within the scope of permission given to the first permittee. National claims that Eward was not acting for the benefit of Jones at the time of the incident because Eward was by then equally as intoxicated as Jones, and Eward's use was not within the scope of permission McClees gave to Jones. National contends that the trial court erred in finding McClees had waived his restriction on driving the van while drinking alcohol. National relies on the case of *Home Mutual Insurance Co. v. Automobile Underwriters, Inc.* (S.D.Ind. 1967) 261 F.Supp. 402, to support its propositions. But National's reliance on *Home Mutual* is misplaced because the omnibus clause at issue was substantially different from the one here.

The omnibus clause in *Home Mutual* specifically included a proviso that the permittee's "actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission." *Id.* at 404. In other words, the insurer incorporated specific language in the clause to narrow the scope of coverage so as to exclude a permittee who used the vehicle for a purpose other than the one the owner intended. The *Home Mutual* court noted that the insurer had obviously added this language to avoid the consequences of *Arnold,* wherein a permittee was found to be insured when he had substantially deviated from the owner's purpose. The *Home Mutual* court also observed that *Arnold* had discussed two types of situations in which a liberal construction of omnibus clauses would be appropriate: (1) when the first permittee has deviated from the use intended by the owner, and (2) when the first permittee has delivered the vehicle to a second permittee. In the latter instance coverage may be implied to the second permittee so long as the owner did not expressly forbid such delegation. *Id.*

In this case the undisputed fact is that McClees did not expressly prohibit Jones from allowing others to drive the van, and the trial court was correct to conclude Eward had implied permission. *Arnold, supra; Cornell, supra.* Further, under *Arnold,* the fact that a permittee used the vehicle for a purpose not contemplated by the owner when he gave permission does not exclude the permittee from coverage, and the extent of the deviation from the original purpose is not material. We do not overlook the fact that McClees told Jones he did not want any drinking alcohol and driving. But the trial court, in its discretion, could correctly conclude McClees had waived that restriction when he took Jones and others for alcoholic drinks knowing that Jones had no other transportation except the van.

National next contends the trial court erred by finding Jones's injuries were the

result of an accident as that term was defined in its policy. National specifically points to the language in the contract, which reads:

"We will pay all sums the *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto.* [Emphasis in original.]"

The definition of accident reads:

"... continuous or repeated exposure to the same conditions resulting in *bodily injury* or *property damage* the *insured* neither expected nor intended. [Emphasis in original.]"

National contends that because Eward was driving while intoxicated at the time the van struck Jones his conduct was willful and wanton as a matter of law;[2] thus, the act of striking Jones cannot be said to have been *un* intentional or *un* expected, that is, an accident. National states the trial court was *required* to find Eward was acting intentionally, or was acting under circumstances in which he knew his misconduct would probably cause injury to another.

National bases its contention on *Williams v. Crist* (1985), Ind., 484 N.E.2d 576, a case which held that evidence a driver was intoxicated at the time of an accident is sufficient to show willful or wanton misconduct within the meaning of the Indiana Guest Statute.[3] National asserts that the legal definition of willful is the same as the definition of the terms "intended or expected" which it used in the exclusion within its definition of an accident. Therefore, because the evidence was undisputed Eward was intoxicated when the van struck Jones, Jones's injuries were not the result of an accident within the meaning of the contract, and the trial court was required to so find. National urges us to find that the liability standard for the purposes of the Guest Statute should be the same as the contractual standard under which it can enforce an exclusion. This we will not do.

Insurance contracts are usually contracts of adhesion, that is, the insured has little or no control over the terms and must adhere to those of the drafter. *Evans v. National Life Acc. Ins. Co.* (1984), Ind.App., 467 N.E.2d 1216. Thus, when construing an insurance contract, the court must seek to determine the intent of the parties to the contract. *Northland Ins. Co. v. Crites* (1981), Ind.App., 419 N.E.2d 164. This court will not remove from coverage a risk which a policy can be reasonably construed to protect against. *Protective Life Ins. Co. v. Coca–Cola Bottling—Indianapolis—Inc.* (1984), Ind.App., 467 N.E.2d 786. Further, if there is an ambiguity in the contract, that is, if reasonably intelligent people could differ as to its meaning, the contract should be construed liberally in favor of the insured. *Miller v. Dilts* (1984), Ind., 463 N.E.2d 257. But, here, there is no ambiguity.

We observe that the policy in question covers loss as a result of an accident caused by the ownership, maintenance, or use of the vehicle that is covered by the policy, and specifically bodily injuries accidentally suffered. The word "accident," as it is ordinarily used means an unexpected happening without an intention or design, *Rothman v. Metropolitan Casualty Ins. Co.* (1938), 134 Ohio St. 241, 16 N.E.2d 417,[4] which is the same as the way the word is defined by National. It has long been settled as a matter of public policy that the act of intentionally inflicting an injury cannot be covered by insurance. *Rothman, supra.* This proposition was well stated in the case of *Commonwealth Casualty Co. v. Headers, d/b/a Cadillac Auto Livery* (1928), 118 Ohio St. 429, 161 N.E. 278, 279: "[s]urely no one would claim that a party holding an ordinary accident

---

**2.** It is not contested at trial that, as a result of this incident, Eward was convicted of driving while intoxicated.

**3.** IND.CODE 9–3–3–1 (West 1979).

**4.** The dictionary definition is "a sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976).

insurance policy covering all forms of external accidental injuries could recover under such a policy damages sustained by reason of a willful and intentional injury inflicted by another." Under National's policy, only acts which are *not* motivated by an intent and purpose to injure are covered.

Yet, the policy does not mention the word "negligence." In fact, in practically every incident out of which liability arises under such a policy there is a violation of some traffic law or regulation. It is obvious that protection against liability for negligence is the primary reason for holding such a policy. *Rothman, supra.* Is it reasonable then to say that one who is driving while intoxicated is so negligent that (1) his manner of driving may be said to be willful and wanton, (2) no accident occurred, and (3) the injured party's injury was not suffered accidentally? We think not.

■ The contract at hand insures against loss as a result of an accident. There is no limitation as to how the accident may occur. The contract does not expressly exclude damages from an accident in which the owner or driver is under the influence of alcohol. If there was to be an exception or limitation in this respect, the policy should contain the language to put the holder on notice of such limitation. *Rothman, supra.*

The facts of this case reveal that Eward, the insured, was intoxicated. But, there was absolutely no evidence from which the trial court could conclude he intentionally and maliciously used the van to strike Jones or to cause him any injury. While a party may be presumed to be acting willfully and wantonly for the purpose of establishing liability under the Guest Statute, intent should be specifically established by

the evidence for a party's conduct to fall within the exclusionary clause of this policy.[5]

■ Finally, National contends the trial court erred by denying its oral motion under Trial Rule 8(D) [6] to have all matters deemed admitted as to Jones because Jones did not file an answer to its amended complaint. National's amended complaint, which added McClees as a defendant, was identical to its original complaint except for one averment. Jones had filed an answer to the original complaint. But Jones's attorney at the beginning of trial claimed that he did not receive the amended complaint. After allowing a short recess to give Jones's attorney an opportunity to read the amended complaint, the trial court permitted Jones to answer orally. Jones then denied the averments exactly as he had done originally, and admitted to the one new averment.[7] Therefore, from a practical standpoint, National was not prejudiced by the trial court's act of allowing Jones to answer the amended complaint at trial.

But National contends the language of T.R. 8(D) is mandatory that all matters are admitted when not denied in a responsive pleading. National argues the trial court did not have discretion to deny its oral motion, to allow Jones to answer the amended complaint at trial, or to allow Jones to introduce evidence at trial contrary to the allegations in the amended complaint. National relies on *Commercial Credit Corp. v. Miller* (1972), 151 Ind.App. 580, 280 N.E.2d 856, a case involving an unanswered counterclaim, for the proposition that Jones's failure to answer must be construed as an admission. However, *Commercial Credit* is distinguishable from the case at hand.

> "*Effect of Failure to Deny.* Averments in a pleading to which a responsive pleading is required, except those pertaining to amount of damages, are admitted when not denied in the responsive pleading."

---

5. Even if we were to conclude that henceforth all contracts such as this would be governed by the liability standard for the Guest Statute—which we will not—we observe the contract was made in 1984, a year before the *Williams* case was decided. Thus, the parties could not have based their contractual intentions upon the decision rendered in that case.

6. Trial Rule 8(D), in relevant part, reads:

7. This averment stated that after the incident Eward had pled guilty to operating a motor vehicle while intoxicated causing serious bodily injury.

In that case, Commercial Credit filed a complaint in replevin for possession of the Millers' automobile. The Millers filed an answer and counterclaim alleging payment. The trial judge found in favor of the Millers on the replevin action, and also gave a judgment of $1,000 damages on the counterclaim, apparently based on the Millers' loss of use of their car. On appeal, Commercial Credit challenged the award on the counterclaim. However, this court noted that the *record* disclosed that Commercial Credit had failed to answer the counterclaim. It held, therefore, that the trial court was required to accept as admitted the allegations of the counterclaim (except for the amount of damages), which stated that the Millers owned the car and were entitled to its immediate possession. *Commercial Credit* is easily distinguishable in two respects. First, Commercial Credit never filed an answer. Here, there was an answer on file which responded to all of the material allegations of both the complaint and the amended complaint. Second, here the original answer was orally amended in open court before evidence was heard.

Indiana Rules of Procedure, Trial Rule 15(A) provides for the amendment of pleadings and states as follows:

"(A) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty [30] days after it is served. *Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires.* A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within twenty [20] days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders. [Emphasis added.]"

Our federal courts have construed the same provisions as follows:

"However, unlike amendments as of course, amendments under the second portion of subdivision (a) may be made at any stage of the litigation. The only prerequisites are that the district court have jurisdiction over the case and an appeal must not be pending. If these two conditions have been satisfied the court will proceed to examine the effect and the timing of the proposed amendments to determine whether they would prejudice the rights of any of the other parties to the suit." 6C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1484, at 420 (1971) (Construing Federal Rules of Civil Procedure 15(a)).

In addition, oral motions are permissible. "Leave to amend also may be requested in open court instead of by formal motion. Courts have held that an oral request to amend a pleading that is made before the court in the presence of opposing party's counsel may be sufficient if the adverse party is put on notice of the nature and purpose of the request and is given the same opportunity to present his objections to the proposed amendment as he would have if a formal motion had been made." 6C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1485 at 422 (1971) (Construing F.R.C.P. 15(a)).

[9] Here, there is no question as to prejudice because Jones admitted to the only averment in the amended complaint that was different from those in the original complaint. Even if the record here had disclosed there was no attempt to respond to the amended complaint, there is authority that T.R. 8(B) does not apply where the response to an original complaint serves equally to respond to the allegations in the amended complaint. In *LaGorga v. Kroger Company* (3rd Cir.1969), 407 F.2d 671, 673, the court stated:

"In these circumstances, accepting appellant's contention would be to reject the well established principle that, under the federal rules pleading is a vehicle ' "to facilitate a proper decision on the merits" ' and not ' "a game of skill in

which one misstep by counsel may be decisive * * * " ' ". *Id.* (quoting *United States v. Hougham* (1969) 364 U.S. 310, 317, 81 S.Ct. 13, 18, 5 L.Ed.2d 8).

Thus, National's final allegation of error must fail in light of the construction and the spirit of our rules which were made to promote the idea of liberal pleadings.

 We affirm.[8]

GARRARD, P.J., and CONOVER, J., concur.

---

8. National contends Jones, in his appellee's brief, has failed to fully respond to all of the issues, and that this court should reverse where it has shown *prima facie* error. We note, however, that the reason for this rule is to protect the court and to relieve it from the burden of controverting the arguments advanced for reversal, a duty which properly rests upon counsel for the appellee. The implementation of the rule is within the court's discretion. Here, there was no reason for this court to reverse as appellee has sufficiently briefed the material issues. *Roth v. Vandalia Railroad Co.* (1919), 187 Ind. 302, 119 N.E. 1, 5 C.J.S. Appeal and Error § 1344 (1958).