**RED BALL LEASING, INC. and American Red Ball Transit Company, Inc., Plaintiffs–Appellants,**

v.

**The HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant–Appellee.**

**No. 88–3396.**

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1990.

Decided Oct. 4, 1990.

---

Joseph H. Yeager, Jr., Terrill D. Albright, Baker & Daniels, Indianapolis, Ind., for plaintiffs-appellants.

David T. Kasper, Ariane Schallwig Johnson, Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., for defendant-appellee.

Before CUMMINGS, POSNER, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiffs-appellants brought this diversity suit against the Hartford Accident and Indemnity Company (Hartford) to recover for breach of an insurance contract. Both parties moved for summary judgment. On November 4, 1988, the district court entered an order granting summary judgment in favor of Hartford. For the following reasons, we affirm the judgment of the district court.

## I

## BACKGROUND

A. *Facts*

Red Ball Leasing, Inc. sells and leases trucks and is a wholly owned subsidiary of the other appellant, American Red Ball Transit Company, Inc. For purposes of this appeal, these companies will be referred to collectively as "Red Ball."

During the entire period in question for this appeal, Red Ball carried casualty insurance from Hartford that bound Hartford to indemnify and defend Red Ball in any suit involving, *inter alia*, property damage or personal injury. The policy defines property damage to include a "loss of use of tangible property ... provided such use is caused by an *occurrence*." R.2 Ex.1 at 2 (emphasis in original). The policy further defines an "occurrence" as follows:

"occurrence" means an accident, including continuous or repeated exposure to

conditions, which results in ... *property damage* neither expected nor intended from the standpoint of the *insured.*

*Id.* (emphasis in original). The personal injury coverage applied to the extent that Red Ball became liable to any person or organization as a result of a "wrongful entry or eviction, or other invasion of the right of private occupancy." *Id.* at PL–2.

Between July 1980 and February 1981 Red Ball sold four trucks to Bob Luttrell, d/b/a Red Star Moving Company (Luttrell). Luttrell financed the purchase of the trucks through Red Ball and granted Red Ball a security interest in the trucks. In June 1982, Red Ball repossessed the four trucks because Red Ball's accounting system erroneously indicated that Luttrell had defaulted on his payments for the trucks. Luttrell claimed that his payments had been timely and sued Red Ball in district court in Missouri for intentional and negligent conversion of the trucks, breach of contract, intentional interference with business, and conspiracy to interfere with business. Red Ball requested that Hartford represent it in the action. It asserted that the suit was covered by the insurance policy as being either property damage caused by an "occurrence" or personal injury as an invasion of the right of private occupancy. Hartford refused to represent Red Ball in the suit. Red Ball subsequently settled with Luttrell for $100,000 and incurred approximately $13,240 in legal fees. Red Ball then brought this suit to recover from Hartford the settlement amount and its attorney fees.

B. *District Court Opinion*

The district court first examined whether Hartford would be liable to Red Ball under the property damage coverage of the insurance policy. The court agreed with Red Ball that conversion (one of the theories of recovery in the Luttrell suit) would satisfy the "loss of use" prong of the insurance policy. *Red Ball Leasing, Inc. v. Hartford Accident and Indem. Co.,* Mem. op. at 6 (S.D.Ind. Nov. 4, 1988). But the court decided that the injury was not a result of an "occurrence" because the injury was "the natural result of the voluntary and inten-

tional act of repossession." *Id.* at 7. The district court concluded that Red Ball, although laboring under an "erroneous belief that the repossession was lawful," nonetheless "expected and intended to deprive Luttrell of the use of his trucks" when it decided to repossess them. *Id.*

The court then examined the personal injury coverage. The court pointed out that the injury does not have to be the result of an "occurrence" in order to trigger personal injury coverage. Accordingly, the court focused on the words "wrongful entry or eviction, or other invasion of the right of private occupancy." Red Ball admitted that "wrongful entry or eviction" referred to real property invasions, but claimed that "private occupancy" could apply to invasions of personal property, such as involved in the Luttrell suit. The court, applying the doctrine of *ejusdem generis,* rejected Red Ball's interpretation. The court decided that the specific words (wrongful entry and eviction) both refer to real property invasions, and thus "private occupancy" also must refer only to real property invasions. *Id.* at 9–10.

II

ANALYSIS

A. *Governing Principles*

Indiana insurance law establishes that plain and unambiguous policy language is given its ordinary meaning. *Eli Lilly and Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 991 (1987). If, however, the language is ambiguous, the terms should be construed in favor of coverage. *Id.; see also Cincinnati Ins. Co. v. Mallon,* 409 N.E.2d 1100, 1103 (Ind. Ct.App.1980). Policy language is ambiguous "if reasonable persons may honestly differ as to [its] meaning." *Eli Lilly,* 482 N.E.2d at 470; *see also Hitt v. Githens,* 509 N.E.2d 210, 212 (Ind.Ct.App.1987); *Stockberger v. Meridian Mut. Ins. Co.,* 182 Ind.App. 566, 395 N.E.2d 1272, 1277 (Ind. Ct.App.1979). "The language of the policy must be reasonably construed by the court

which may not find coverage unless the language of the policy admits liability." *Stockberger*, 395 N.E.2d at 1277.

## B. *Application to This Case*

Red Ball asserts that its actions were covered by both the property damage and personal injury provisions of its insurance policy with Hartford. We shall consider each policy provision in turn.

### 1. Property damage coverage

The insurance policy provided that Hartford would "pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of ... *property damage* to which this insurance applies, caused by an *occurrence*." R.2 Ex.1 at CGL–2 (emphasis in original). "Property damage" is further defined to include the "loss of use of tangible property" caused by an occurrence. *Id.* at 2. As discussed above, "occurrence" is defined as "an accident ... which results in ... *property damage* neither expected nor intended from the standpoint of the *insured*." *Id.* (emphasis in original).

The district court first determined that the type of injury involved here, conversion of Luttrell's trucks, can be characterized as a "loss of use." Hartford does not dispute this conclusion, nor do we. The district court then examined whether the loss of use (i.e., the conversion) was caused by an "occurrence." According to the district court, the injury

> was the natural result of the voluntary and intentional act of repossession. Moreover, under the policy provisions, the property damage must be "neither expected nor intended" by the insured in order for there to be an "occurrence." Red Ball certainly expected and intended to deprive Luttrell of the use of his trucks when it chose to repossess, notwithstanding the erroneous belief that

the repossession was lawful because Luttrell was in default.

Mem. op. at 7.

█ In interpreting the policy provision, our first step, as required by Indiana law, is to examine the plain language of the policy. The first term that requires analysis is "accident," because in order to be an "occurrence" the action must be an "accident." A leading treatise defines "accident" as follows:

> an accident has been defined as an unusual or unexpected event, happening without negligence; chance or contingency; happening by chance or unexpectedly; an event from an unknown cause or an unexpected event from a known cause.

11 Couch on Insurance § 44:288 at 443 (2d ed. 1982). Several courts have defined "accident" for purposes of similar insurance provisions as an unusual, unexpected, and unforeseen event. *See Federated Mut. Ins. Co. v. Madden Oil Co.*, 734 S.W.2d 258, 261 (Mo.Ct.App.1987); *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group*, 37 Wash.App. 621, 681 P.2d 875, 878 (App.1984); *City of Wilmington v. Pigott*, 64 N.C.App. 587, 307 S.E.2d 857, 859 (App.1983), *review denied*, 310 N.C. 308, 312 S.E.2d 650 (1984); *Ed. Winkler & Son, Inc. v. Ohio Casualty Ins. Co.*, 51 Md.App. 190, 441 A.2d 1129, 1132 (Md. Ct.Spec.App.1982).

There is no doubt that Red Ball intended to repossess the trucks; that action clearly was not an accident. However, Red Ball asserts that the *conversion* was accidental, because Red Ball believed that it had a right to repossess the trucks. This argument relies on a reading of the policy that would allow coverage when the insured volitionally commits an act, but the decision to commit the act is based on erroneous or mistaken information.

Several courts have concluded, after examining policy provisions that are identical to that found in the Hartford policy, that a volitional act does not constitute an "accident."[1] Indeed, there are several cases

1. *See Roulette County v. Western Casualty & Sur. Co.*, 452 F.Supp. 125, 130 (D.N.D.1978) (claim against county sheriff for deprivation of constitutional rights not an "occurrence" because the acts of seizing mobile home and automobile "were clearly intentional, not accidental"); *Thrif–Mart, Inc. v. Commercial Union Assurance Cos.*, 154 Ga.App. 344, 268 S.E.2d 397,

supporting the conclusion that a volitional act that is based on erroneous information is not an "accident" or "occurrence." *See Ed. Winkler & Son, Inc. v. Ohio Casualty Ins. Co.,* 51 Md.App. 190, 441 A.2d 1129 (Md.Ct.Spec.App.1982); *Argonaut S.W. Ins. Co. v. Maupin,* 500 S.W.2d 633 (Tx. 1973). *See generally Simmons Refining Co. v. Royal–Globe Ins. Co.,* 543 F.2d 1195, 1197–98 (7th Cir.1976) (receiving stolen gold without knowledge of theft is not an "occurrence").

In *Ed. Winkler & Son,* the insured was the owner of a jewelry store who mistakenly accused a customer of stealing a diamond and substituting a zircon in its place. The insured had the customer arrested, and the customer was strip searched at the police station. It was later discovered that the alleged zircon was a real diamond. The customer brought suit against the insured based on emotional distress, and the insured requested that the insurance company extend coverage under a property damage clause virtually identical to the one in this suit. The insurance company refused coverage. 441 A.2d at 1130.

The court determined that the key question was whether the act charged by the customer as the grounds for the tort could be regarded as an "accident." In order to decide this, "[t]he only relevant consideration is whether ... the chain of events leading to the injuries complained of was set in motion and followed a course consciously devised and controlled by appellant without the unexpected intervention of any third person or extrinsic force." *Id.* at 1132. The court further stated that

> [t]he implication is clear that, whether prompted by negligence or malice, (1) appellant's acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within appellant's foresight and anticipation.

*Id.* Accordingly, the court concluded that the act was not an "accident" or "occurrence," and was not covered by the insurance policy. *Id.*

Similarly, the Supreme Court of Texas in *Argonaut Southwest Insurance Company* determined that an act taken under a mistaken assumption was not an "accident." Again, the insurance policy in that case was virtually identical to the one in this case. The insured entered into an agree-

---

400 (Ga.Ct.App.1980) (if jury determined that insured intended to cause damage to store, it would be irrelevant that he did not intend to start fire; "the resulting damage was both intentional and expected"); *American Home Assurance Co. v. Osbourn,* 47 Md.App. 73, 422 A.2d 8, 13 (Md.Ct.Spec.App.1980) (towing of vehicles was not an "accident" because there was no injury caused that was unexpected); *City of Wilmington v. Pigott,* 64 N.C.App. 587, 307 S.E.2d 857, 859 (N.C.Ct.App.1983) (erroneous decision by building inspector to inform property owners that their greenhouses did not meet zoning requirements was not an "occurrence"; "[t]he decision did not happen by chance and was not unexpected" even though the inspector "may have mistakenly or erroneously interpreted the Wilmington building code"), *review denied,* 310 N.C. 308, 312 S.E.2d 650 (N.C.1984); *National Farmers Union Property and Casualty Co. v. Kovash,* 452 N.W.2d 307, 311–12 (N.D.1990) (because trespass is an intentional act, court concluded that injury was not caused by an "occurrence"); *General Ins. Co. v. Palmetto Bank,* 268 S.C. 355, 233 S.E.2d 699, 701 (1977) (sale of machines stored in warehouse after party storing the machines failed to pay rent; damage was "certainly expected and intended" by insured); *Deseret Fed. Sav. and Loan Ass'n v.*

*United States Fidelity & Guar. Co.,* 714 P.2d 1143, 1146 (Utah 1986) (injury caused by an intentional act, constructive eviction, was not "unexpected and unintended damages" covered by the policy); *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group,* 37 Wash.App. 621, 681 P.2d 875, 878 (Wash.Ct.App.1984) ("An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage."); *cf. Thomason v. United States Fidelity & Guar. Co.,* 248 F.2d 417, 419 (5th Cir.1957) (bulldozer strayed onto adjoining land by mistake; not an "accident" for purposes of insurance coverage that referred only to accidents and not "occurrences," because the act was voluntary and intentional). *But see N.W. Elec. Power Coop., Inc. v. American Motorists Ins. Co.,* 451 S.W.2d 356, 362–64 (Kan.Ct.App.1969) (damage to land caused by placement of power line outside of easement was an "accident" because the injury was not inflicted intentionally); *Vermont v. Glens Falls Ins. Co.,* 137 Vt. 313, 404 A.2d 101, 103–04 (1979) (sheriff seized wrong property pursuant to a writ of execution; action was an "occurrence" because sheriff held an honest belief that the property was properly seized).

ment with a Mr. Kipper to purchase "borrow material" from land occupied by Mr. Kipper. After more than 5,000 cubic yards of borrow material had been removed from the land it was discovered that Mr. Kipper was only a tenant in possession. The true owners of the property brought suit against the insured for trespass. The insured requested its insurance carrier to represent it in the suit, but the carrier denied coverage. The insured claimed that its removal of the borrow material was an "occurrence." The Texas Supreme Court disagreed:

> The plaintiff's act in trespassing upon the [owners'] property did not constitute an accident. They did what they intended to do by removing the borrow material from the property. The fact that they were unaware of the true owner of the property has no bearing upon whether the trespass was caused by accident. The respondent's acts were voluntary and intentional, *even though the result or injury may have been unexpected, unforeseen and unintended.*

500 S.W.2d at 635 (emphasis supplied). The court concluded that there was no coverage under the insurance policy because the act was not an accident or "occurrence." *Id.*[2]

 A volitional act does not become an accident simply because the insured's negligence prompted the act. Injury that is caused directly by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident. *See N.W. Elec. Power Coop., Inc. v. American Motors Ins. Co.,* 451 S.W.2d 356, 363–64 (Kan.Ct.App.1969); 11 Couch on Insurance 2d § 44:267 at 415 (1982). However, the latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident.[3] In this case, it is clear that Red Ball intended to repossess the Luttrell trucks.[4] A plain reading of the policy discloses that what must be "neither expected nor intended" is the *damage;* knowledge of the legal consequences is not material.[5] Even if the

**2.** Red Ball cites three state cases to support the proposition that a negligent conversion is an "occurrence" under insurance policies. *Vermont v. Glens Falls Ins. Co.,* 137 Vt. 313, 404 A.2d 101 (1979); *Nielsen v. St. Paul Cos.,* 283 Or. 277, 583 P.2d 545 (1978); *Continental Casualty Co. v. Plattsburgh Beauty and Barber Supply, Inc.,* 48 A.D.2d 385, 370 N.Y.S.2d 225 (Sup.Ct. 1975). Two of these cases are easily distinguishable from this case. *Neilsen* concerns the inquiry whether a tort of battery existed and thus the court's analysis involved the public policy against insuring intentional torts. 583 P.2d at 547. *Continental Casualty* involves an insured who instigated the correct proceedings to replevin property, and the injury occurred only because of the intervening error of the sheriff who executed a levy on the wrong property. 370 N.Y.S.2d at 227. The court in *Glens Falls Insurance Company* indeed does hold that a charge of conversion against a sheriff for seizing the wrong property was an "occurrence" because the sheriff did not intend to cause injury. 404 A.2d at 104. Respectfully, we are not persuaded by this reasoning, especially in light of the weight of case law to the contrary. *See supra* note 1.

**3.** *See Thomason v. United States Fidelity & Guar. Co.,* 248 F.2d 417, 419 (5th Cir.1957) (not an accident when bulldozer operator made mistake about location of boundary for land to be cleared); *Ed. Winkler & Son,* 441 A.2d at 1132 (injury that was prompted by negligence or mal-

ice still not an accident, because the acts were committed deliberately and the likely effects of the act were apparent); 11 Couch on Insurance 2d § 44:267 at 416 (it is "immaterial that the voluntary act was itself intended because of a mistake or error as to the work to be done by the insured") (citing *Thomason* ); *cf. Piggott,* 307 S.E.2d at 859 (not an accident, even though building inspector, in instructing homeowners about property that must be torn down, "may have mistakenly or erroneously interpreted" the building code).

**4.** *Cf. Bolin v. State Farm Fire & Casualty Co.,* 557 N.E.2d 1084 (Ind.Ct.App.1990) (whether insured intended to injure victim by his use of pellet gun cannot be determined as a matter of law on summary judgment); *Indiana Farmers Mut. Ins. Co. v. Graham,* 537 N.E.2d 510 (Ind.Ct. App.1989) (insureds did not intend or expect injury because they were not consciously aware that the resulting property damage was practically certain to occur); *Indiana Lumbermen's Mut. Ins. Co. v. Brandum,* 419 N.E.2d 246, 248 (Ind.Ct.App.1981) (exclusion applicable only when insured intended harm to the party actually injured).

**5.** *See, e.g. Home Ins. Co. v. Neilsen,* 165 Ind.App. 445, 332 N.E.2d 240 (Ind.Ct.App.1975) (whether blow causing bodily injury was legally excusable as self-defense is not relevant on issue of insurance coverage).

mistake in Red Ball's accounting procedures triggered the chain of events that ultimately led to the repossession, the decision to take the trucks—an intentional act of Red Ball—is not an "accident" under the terms of the insurance policy. Therefore, we conclude that the injury was not covered by the property damage provision of the insurance contract.

## 2. Personal injury coverage

■ According to the personal injury provision of the Hartford insurance policy, Hartford is obligated to pay on behalf of the insured for damage that the insured incurs "arising out of ... wrongful entry or eviction, or other invasion of the right of private occupancy." R.2 at PI–2. The district court first noted that coverage under the personal injury provision does not require that the act be an "occurrence" (as is required under the property injury section). The court then decided that the policy does not cover the injury in this case, because the phrase in the insurance policy— "wrongful entry or eviction, or other invasion of the right of private occupancy"—is limited to damage to *real* property. The court reached this conclusion by applying the rule of *ejusdem generis*.[6]

Several courts have examined policy language identical to that found in this case and concluded that the "other invasion" language refers only to real, not personal, property. In *Waranch v. Gulf Ins. Co.*, 218 Cal.App.3d 356, 266 Cal.Rptr. 827 (Ct. App.1990), the insured asserted, among other things, that a claim regarding wrongful repossession of an automobile was covered by its personal injury policy. The court rejected this theory, concluding that the "other invasion" language applied only

to real property. *Id.* 266 Cal.Rptr. at 828. The court also agreed with the application of the *ejusdem generis* rule to the policy provision (identical to the policy in this case), and concluded thereby that the claim for conversion of an automobile was not covered by the policy. *Id.* at 829; *see also Nichols v. Great Am. Ins. Co.*, 169 Cal. App.3d 766, 215 Cal.Rptr. 416, 421 (App. 1985).[7]

In this case, the district court determined that the placement of the "other invasion" language after two real property invasions meant that the other invasions had to involve real property as well. We agree with the district court that application of the rule of *ejusdem generis* to this insurance provision precludes coverage for anything other than invasions of real property. *See also Martin v. Brunzelle*, 699 F.Supp. 167, 170 (N.D.Ill.1988); *Waranch*, 266 Cal.Rptr. at 829. *But see Gardner v. Romano*, 688 F.Supp. 489, 493 (E.D.Wis.1988) (concluding that the policy language was vague). Accordingly, we conclude that the district court was correct in deciding that the personal injury provision in the Hartford policy is not applicable to the Luttrell claim in this case.

## Conclusion

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED

---

6. *Ejusdem generis* is defined by Black's Law Dictionary as follows:
 In the construction of laws, wills, and other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned.

7. In *Harbor Ins. Co. v. Anderson Leasing, Inc.*, 1989 WL 112532 (Del.Super.Ct.1989), Anderson repossessed a motor vehicle that it had leased to a customer. The customer sued, and Anderson tendered its claim for coverage to its insurance carrier. After the insurer refused coverage, Anderson settled the case. Anderson then sued the insurer and claimed that the personal injury policy covered the injury. The Delaware court disagreed, concluding that the policy applied only to invasions of interest in real property.