**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**James E. NORRIS, Mary E. Houser, and Jeana Duane, Defendants.**

**No. IP 91–427–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

July 9, 1992.

John W. Hammel, Yarling Robinson Hammel & Lamb, Indianapolis, Ind., for plaintiff.

James E. Norris, pro se.

Barbara J. Germano, Price & Shula, Indianapolis, Ind., for defendants Mary E. Houser and Jeana Duane.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

Plaintiff Allstate Insurance Co. ("Allstate") has moved for summary judgment in this action, which seeks a declaration that Allstate is not liable to pay for injuries sustained by defendant Jeana Duane when she was shot by Allstate's insured, defendant James E. Norris, on March 22, 1990. Jurisdiction and venue are proper. For the reasons discussed below, the Court GRANTS Allstate's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed. Allstate, an Illinois corporation with its principal place of business in Northbrook, Illinois, issued a homeowners' insurance policy to Norris that was effective from March 30, 1989 to March 30, 1990, and covered his residence at 5038 West Minnesota Street in Indianapolis, Indiana. On March 22, 1990, Norris had an argument with an unidentified man in front of his house. This unidentified man ended the argument by firing two pistol shots at Norris, running across the street in a southeast direction, then crouching behind an automobile that was parked on the west side of the home at 5021 West Minnesota. In the meantime, Norris ran into the bedroom of his house, where he kept a .30 caliber, semi-automatic rifle. Norris took the rifle, which was loaded with twenty rounds of ammunition, and began shooting in the direction of the man. Norris fired a total of nine shots in attempting to "pin down" the man until sheriff's deputies could arrive. Because Norris was aiming at and over the car, he never hit the man, who eventually escaped.

Norris did hit Jeana Duane, however. Duane was one of several teenagers in the house at 5021 West Minnesota at the time Norris did his shooting. Duane was standing near the front (north) window of the house, holding an eighteen-month-old baby, when she was struck in the wrist by one of Norris's shots. The bullet shattered Duane's wrist and caused her to drop the baby, who also was hit by a bullet. Over the course of one to two minutes, a total of six shots entered the house, through either the front window or the side (west) window. One bullet struck the car behind which Norris's unknown assailant had crouched, and two struck a tree near the car.

Norris subsequently was arrested and charged with two counts of attempted murder and, by amended information, a third count of felony criminal recklessness. Norris pleaded guilty to count three on July 3, 1990, and admitted on the record that he "repeatedly [shot] a rifle into and through the house" at 5021 West Minnesota, although without "hitting anyone intentionally." [1] Transcript of Plea Hearing at 4, 8. At Norris's sentencing hearing on July 31, 1990, his lawyer attempted to clarify the meaning of Norris's earlier admission:

[Mr. Norris] meant to indicate ... that he did not intentionally fire shots into the house. It is stated [in the transcript of the plea hearing] he did not fire shots into the house. It's very clear that shots were fired into the house, and we would admit that. Mr. Norris admitted that in the factual basis taken by the Court. What he meant to say was that the *shots were fired at, around, and into the house, but not intentionally at anyone who was in the house* .... [T]here's no question Mr. Norris wants to tell the

---

1. Pursuant to a plea agreement, counts one and two were dismissed.

Court today that shots were fired into the house.

Transcript of Sentencing Hearing at 3–4 (emphasis added). Norris told the court that this interpretation of his admission was correct, and he stated that his intent in firing had been to "scare" people, although it is not clear to what "people" he was referring. *Id.* at 5–6, 12. Norris was sentenced to eight years in prison.

Duane and her mother, defendant Mary Houser, filed a state civil complaint against Norris shortly after the shooting, seeking damages for assault and battery, mental and emotional distress, and negligence. Allstate initiated this action on April 22, 1991, asking for a declaration that it is not liable under Norris's homeowner's policy for any of Duane's or Houser's claims. Allstate moved for summary judgment on April 24, 1992. Houser and Duane timely responded to this motion on June 3, 1992; Allstate did not reply, and the motion became ripe for resolution on June 13, 1992.

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56(c) provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

When the standard embraced in Rule 56(c) is met, summary judgment is mandatory. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). As stated in *Celotex,* summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex,*

477 U.S. at 327, 106 S.Ct. at 2554–55. Decisions of the Seventh Circuit are in conformity with this view. *See, e.g., Patrick v. Jasper County,* 901 F.2d 561, 565 (7th Cir. 1990); *Spellman v. Commissioner,* 845 F.2d 148, 151–52 (7th Cir.1988).

Moreover, the mere existence of a factual dispute is not by itself sufficient to bar summary judgment; the disputed fact must be outcome determinative. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *International Bhd. of Boilermakers v. Local D354,* 897 F.2d 1400, 1406 (7th Cir.1990). The party opposing a motion for summary judgment bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991); *Harris v. City of Zion,* 927 F.2d 1401, 1407 (7th Cir.1991). Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Clampitt v. Ft. Wayne,* 682 F.Supp. 401 (N.D.Ind.), *aff'd,* 864 F.2d 486 (7th Cir.1988).

## III. DISCUSSION

Allstate has advanced three grounds upon which it says its policy does not cover Duane's injuries: (1) her injuries were not the result of an "accident," which is a prerequisite to recovery; (2) they were caused by acts that Norris "intended or expected" to cause bodily injury; and (3) they resulted from a "criminal act" by Norris. Because the first and third grounds both are dispositive, the Court will not address the second.

### A. *Accident*

The policy issued by Allstate to Norris contains two coverage provisions that are implicated by Duane's and Houser's state law claim. Coverage X provides liability protection as follows:

> Subject to the terms, limitations and conditions of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage *arising from an accident* and covered by this part of the policy.

Allstate Deluxe Homeowners Policy (7/89), at 23 (emphasis added). Coverage Y delineates guest medical protection:

> Allstate will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids and pharmaceuticals. These expenses must be incurred and the services performed within three years *from the date of an accident* causing bodily injury covered by this part of the policy.

*Id.* at 26 (emphasis added). Each provision clearly indicates—the first expressly, and the second by necessary implication—that Norris's homeowner's policy will pay for injuries only if they result from accident. Allstate claims that Duane's injuries do not fall into this category.

The Seventh Circuit, in *Red Ball Leasing v. Hartford Accident & Indemnity Co.,* 915 F.2d 306 (7th Cir.1990), evaluated the meaning of the word "accident" as it is used in insurance provisions that define the scope of coverage. In that case, Red Ball repossessed four trucks that belonged to Luttrell and in which it held security interests. Red Ball's records indicated that Luttrell was behind on his payments; Red Ball therefore thought it was entitled to take the trucks. Red Ball was wrong; Luttrell's payments were current. Sometime after the repossession, Luttrell sued Red Ball for conversion and breach of contract, and Red Ball requested that its insurer, Hartford, defend it in the action. Red Ball theorized that its conversion of the trucks constituted an "accident" under its policy, and therefore that Hartford was bound to defend it, because the repossession, though intentional, was made under an erroneous belief that it was lawful. Hartford refused to get involved, so Red Ball sued. *Red Ball,* 915 F.2d at 307–08.

The court of appeals held that Red Ball's conversion of the trucks was not an accident, and therefore was not covered under

the policy. The court drew a clear distinction between an event that is unexpected or unintended (which is an accident), and an event or act that is intended, but causes unexpected consequences (which is not). Under this distinction, a volitional act—which is always intended—does not constitute an accident, even where the results may be unexpected or unforeseen. *Id.* at 309–11 & n. 1.[2] Accordingly, Red Ball's intentional taking of the trucks, whatever the consequences, was no accident. *Id.* at 311–12.

Under the *Red Ball* analysis, Duane's injuries here clearly did not result from an accident, and therefore are not covered under Norris's policy. This result obtains even if one assumes that Norris did not fire his gun at anyone in particular, because it is undisputed that he meant to fire his gun, and that he meant to fire it in the direction of the house where Duane was standing. Norris's actions therefore were volitional, and clearly not accidental, whether or not their consequences were unforeseen. Thus, Duane's injuries are not covered.

### B. *Criminal Act*

■ Another ground supports Allstate's motion. Norris's policy expressly does not cover injuries that result from any "criminal act or omission" by an insured. *See* Allstate Deluxe Homeowners Policy (7/89), at 24 (Coverage X), 26 (Coverage Y). Norris's shooting constituted criminal recklessness—a class C felony in Indiana, *see* Ind. Code § 35-42-2-2(c)—so under the plain and ordinary meaning of the exclusion, Duane's injuries, which resulted from that shooting, are not covered by the policy. *See Southbend Escan Corp. v. Federal Ins. Co.,* 647 F.Supp. 962, 966–67 (N.D.Ind. 1986); *Eli Lilly & Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990, 991 (1987); *City of Muncie v. United Nat'l Ins. Co.,* 564 N.E.2d 979, 982 (Ind.App.1991).

■ Duane and Houser do not seriously deny the effect of this exclusion, but they

---

**2.** Indiana's definition is in accord. *See National Mut. Ins. Co. v. Eward,* 517 N.E.2d 95, 100 (Ind.App.1987) ("accident" means "an unexpected happening without an intention or design").

attack it as being invalid as a matter of public policy. *See City of Muncie,* 564 N.E.2d at 982. In essence, they argue that while an insurance contract may exclude coverage for intentional criminal acts, it may not exclude coverage for *unintentional* criminal acts—i.e., those that are merely reckless. According to this argument, any policy which "excludes all criminal acts regardless [of] whether those acts resulted from intended, expected, or merely reckless conduct" is void. Defendants' Opposing Brief at 17.

This claim has no basis in the law. Duane and Houser have cited no cases, and the Court knows of none, which have held that insurance policies as a matter of public policy cannot exclude coverage for injuries resulting from unintentional criminal acts.[3] In other jurisdictions, such exclusions have regularly been upheld. *See, e.g., Hooper v. Allstate Ins. Co.,* 571 So.2d 1001, 1003 (Ala.1990); *Allstate Ins. Co. v. Schmitt,* 238 N.J.Super. 619, 570 A.2d 488, 492–94 (1990); *Allstate Ins. Co. v. Sowers,* 97 Or. App. 658, 776 P.2d 1322, 1323 (1989); *see also Allstate Ins. Co. v. Freeman,* 432 Mich. 656, 443 N.W.2d 734, 748–49 (1989).[4] Similarly, no court appears to have invalidated, on public policy grounds, an exclusion for injuries caused by less-than-intentional conduct. As a result, Norris's policy must be enforced according to its terms, even though the result is that Duane's inju-

ries are not covered. *See Southbend Escan,* 647 F.Supp. at 966.

## IV. CONCLUSION

For the reasons discussed above, Allstate's motion for summary judgment is GRANTED.

SO ORDERED.

## ENTRY OF JUDGMENT

The Court has granted summary judgment to plaintiff Allstate Insurance Co. against the defendants in this action. Accordingly, plaintiff is not liable to pay or settle any claims by defendants Jeana Duane or Mary Houser which stem from the events involving its insured, James Norris, on March 22, 1990. Similarly, plaintiff is not obligated to defend Norris, or to contribute funds toward his defense, with regard to any such claims. This cause is DISMISSED WITH PREJUDICE.

---

**3.** Duane and Houser have cited two cases, each of which fails to support their position. The provision in *Bolin v. State Farm Fire & Casualty Co.,* 557 N.E.2d 1084 (Ind.App.1990), excluded coverage for "bodily injury ... which is expected or intended by an insured." The court held that "intended" embodies a higher culpability level than "reckless," so that criminally reckless conduct was not necessarily excluded from coverage under the policy. *Id.* at 1088–89. This holding, however, says nothing about whether public policy requires a minimum culpability level for criminal act exclusions. No such exclusion was even at issue there.

The case of *Allstate Insurance Co. v. Schmitt,* 238 N.J.Super. 619, 570 A.2d 488 (1990), actually cuts against the defendants' argument, because it held that a provision excluding coverage for reckless but unintentional criminal conduct did not violate public policy. The defendants argue that this holding was premised on a definition of "reckless" different from the one recognized in Indiana, but the language actually used in *Schmitt* tends to rebut this contention. *Com-*

*pare Schmitt,* 570 A.2d at 493 (defining recklessness under New Jersey law) *with Bolin,* 557 N.E.2d at 1088 (quoting the Indiana statutory definition).

**4.** One might argue that these cases dealt with exclusions that are sufficiently different as to render them inapplicable here. For example, the clause in *Schmitt* excluded "any bodily injury ... which may reasonably be expected to result from the intentional or criminal acts of an insured person...." *Schmitt,* 570 A.2d at 490 (emphasis deleted). These differences tend to reinforce the validity of the exclusion in Norris's policy, however. The *Schmitt* clause required analysis of whether the insured reasonably could have expected the results of his acts. The provision in Norris's policy, by contrast, does not mention the insured's expectation. If the injury results from a criminal act, it is excluded, regardless of what results Norris actually or should have expected.