**STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff–Appellee,**

v.

**Estate of Alan Lee MORGAN, Defendant–Appellant.**

**No. 02–2471.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 2003.

Decided March 19, 2003.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

**ORDER**

State Farm brought a declaratory judgment action against Joyce Henderson and the Estate of Alan Morgan, seeking a construction of the terms of a homeowner's policy of insurance and a determination of its rights and liabilities under the policy. The district court granted State Farm's motion for summary judgment, and the Estate appeals this decision. We affirm.

**I.**

State Farm Fire & Casualty Company ("State Farm") issued a homeowner's policy of insurance to Wilson E. ("Bill") and Joyce F. Henderson, which was in effect from June 26, 1998 until June 26, 1999 ("Policy"). The Policy provides, *inter alia,* that:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury ... to which this coverage applies, caused by an occurrence, we will:
>
> 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice.

The Policy defines "occurrence" as "an accident ... which results in ... bodily injury ... during the policy period." The Policy defines "bodily injury" as "physical injury, sickness, or disease to a person .... [and] includes ... death resulting therefrom." The Policy excludes coverage for "bodily injury ... (1) which is either

expected or intended by the insured; or (2) which is the result of wilful and malicious acts of the insured...."

On December 2, 1999, John F. Morgan and Marilyn F. Morgan, the personal representatives of the Estate of Alan Lee Morgan ("Estate"), brought an action for wrongful death against Joyce Henderson on behalf of the Estate. The lawsuit was based on the events of December 13, 1998, when Joyce Henderson shot and killed Alan Morgan, the boyfriend of her daughter. On the day she shot Alan Morgan, Joyce Henderson gave the following voluntary statement to the police: "I pointed the gun at Alan and told him to stop, stop. Alan said he was going to kill me next. I then shot Alan once." She also stated in a telephone call to 911 that she shot "the boyfriend," meaning Alan Morgan. During the pendency of this lawsuit, Joyce Henderson was convicted for the reckless homicide of Morgan, a class C felony. At the criminal trial, Henderson testified "I got the gun and I pointed it, and they [Bill Henderson and Alan Morgan] was [sic] together and he [Morgan] had Bill around the shoulders. I just fired it. I don't know how I hit him [Morgan] instead of Bill." [1] At the sentencing hearing, she testified "[i]t was an awful thing that happened but as God as my witness, I had no other choice. It was either mine or Bill's life or both of us and he [Morgan] made that really clear to us...."

On December 15, 2000, Joyce Henderson's obligation to pay damages to the Estate for any liability arising from the wrongful death suit was discharged in bankruptcy. On April 9, 2001, State Farm filed a complaint for declaratory judgment against the Estate and Joyce Henderson, alleging that it had no duty to defend Henderson in the wrongful death suit and that it was not responsible for the payment of any applicable insurance proceeds to the Estate for the wrongful death of Alan Morgan. On October 25, 2001, the jury in the wrongful death suit awarded the Estate $2,000,000 in damages, and then reduced the award under Indiana's Comparative Fault Act by 10% (attributing that amount of the fault to Morgan). On November 30, 2001, State Farm moved for summary judgment in this case, arguing that: (1) Alan Morgan's death was not an "occurrence" within the meaning of the Policy issued to the Hendersons; and (2) even if Morgan's death did constitute an "occurrence" under the Policy, the policy explicitly excluded from coverage any "expected or intended" injury caused by the insured (i.e., Joyce Henderson). On May 15, 2002, the district court granted State Farm's motion for summary judgment, formally entering judgment the next day. The Estate appeals this decision.

## II.

We review the district court's grant of summary judgment *de novo*, construing all facts in favor of the nonmoving party, the Estate. *White v. City of Markham*, 310 F.3d 989, 997 (7th Cir.2002).

On appeal, the Estate argues that the district court erred in granting State Farm's motion for summary judgment because there is a genuine issue of material fact as to whether or not the shooting of

---

1. Joyce Henderson also testified at her criminal trial, referring to her grand jury testimony, as follows:
   Question: Question, "Okay, is that when you pointed the gun at him [Morgan] and begged him to stop?," answer, "I did both times.... And it did that, and I did that too." Question, "All right, and then he turned toward you, which is when you shot [him]?," answer, "Yes," correct?
   Answer: Yes.

Alan Morgan constituted an "occurrence" under the Hendersons' homeowner's policy. Under Indiana law, which both parties agree governs this dispute, the interpretation of an insurance policy is a legal question for the court. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992). If a policy's language is clear and unambiguous, it must be given its plain and ordinary meaning. *Id.* at 668. Furthermore, State Farm, as the party seeking a declaratory judgment, has the burden of proving, by a preponderance of the evidence, that Joyce Henderson's actions did not constitute an "occurrence" within the meaning of its Policy. *Sans v. Monticello Ins. Co.*, 718 N.E.2d 814, 819 (Ind.Ct.App.1999).

Here, as previously noted, the Policy provided coverage for bodily injury caused by an "occurrence" (defined as "an accident"), which includes physical injury or death resulting therefrom. In the absence of a policy definition, an "accident" is defined under Indiana law as "an unexpected happening without intention or design," *National Mut. Ins. Co. v. Eward*, 517 N.E.2d 95, 100 (Ind.Ct.App.1987), and, therefore, an intentional act cannot constitute an accident as that term is used in the standard insurance policy definition of "occurrence." *Fidelity & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.*, 25 F.3d 484, 487–89 (7th Cir.1994) (holding that under Indiana law insurer had no duty to defend or indemnify where underlying complaint alleged intentional conduct which was not an "accident" and therefore not an "occurrence" under the policy's terms); *Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1284–85 (Ind.1991) (same).

In concluding that Joyce Henderson's shooting of Morgan was not an "accident" within the meaning of the Policy, the district court relied heavily on the decision of *Allstate Ins. Co. v. Norris*, 795 F.Supp. 272 (S.D.Ind.1992), finding it "particularly instructive." At issue in *Norris* was whether an insurer was liable under a homeowner's policy for damages sustained by a bystander shot by the insured as the insured attempted to "pin down" an assailant until the police arrived. *Id.* at 273. As in this case, the homeowner's policy provided that the insurer would pay damages arising from an "accident," but did not define the term. *Id.* at 274–75. In evaluating whether the insurer was liable under the policy, the *Norris* Court, relying on this court's decision in *Red Ball Leasing v. Hartford Accident & Indem. Co.*, 915 F.2d 306 (7th Cir.1990), noted the distinction "between an event that is unexpected or unintended (which is an accident), and an event or act that is intended, but causes unexpected consequences (which is not)," *id.* at 275, and that under this distinction "a volitional act–which is always intended– does not constitute an accident, even where the results may be unexpected or unforeseen." *Id.* The *Norris* Court then held that the plaintiff's injuries did not result from an "accident," and thus were not covered by the policy, explaining "it is undisputed that [the insured] meant to fire his gun, and that he meant to fire it in the direction of the house where [the bystander] was standing. [The insured's] actions therefore were volitional, and clearly not accidental, whether or not their consequences were unforeseen." *Id.*

Although *Norris* is not controlling authority, it is entirely consistent with the Indiana courts' definition of "accident" as "an unexpected happening without intention or design," *Erie Ins. Co. v. American Painting Co.*, 678 N.E.2d 844, 846 (Ind. App.Ct.1997); *Eward*, 517 N.E.2d at 100, and is also in line with this circuit's holding in *Red Ball Leasing*, 915 F.2d at 311, where we noted that under Indiana law:

A volitional act does not become an accident simply because the insured's negligence prompted the act. Injury that is caused directly by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point. The former injury may be an accident. However, the latter injury, because it is intended and the negligence is attenuated from the volitional act, is not an accident.

*Id.* (internal citations omitted); *see also* 9 Couch on Insurance § 126:27 at 126–53 (3d ed.1997) (noting that "the more sound view may be to place the focus on the insured, rather than the victim of the misfortune. In accordance with this view, where the harm is the natural result of the voluntary and intentional acts of the insured, it is not 'caused by accident,' even though the result may have been unexpected, unforeseen, and unintended").

In this case, the record clearly demonstrates that Joyce Henderson intended to point the weapon at Alan Morgan, intended to pull the trigger, and did in fact pull the trigger of the weapon that killed him— i.e., her voluntary statement to police, the 911 phone call, and her testimony at the criminal trial and sentencing hearing.[2] Her volitional acts of aiming the gun at Morgan and pulling the trigger were not

accidents, and therefore are not covered under the Policy. That she may not have intended to kill Morgan, as the Estate argues on appeal, is irrelevant. *Red Ball Leasing,* 915 F.2d at 311; *Norris,* 795 F.Supp. at 275. Given the foregoing, Joyce Henderson's shooting of Alan Morgan cannot be considered an "occurrence" within the plain meaning of the Policy.[3] Because the shooting was not a covered event under the Policy, and there are no genuine issues of material in fact remaining, the district court was correct in granting State Farm's motion for summary judgment.[4]

### III.

For the reasons noted herein, we AFFIRM the district court's decision.

---

**2.** Moreover, even if the Estate could demonstrate a genuine issue of material fact as to whether these actions were accidental, the Estate forfeited the right to do so by admitting, pursuant to Fed.R.Civ.P. 36(b), that Joyce Henderson deliberately, consciously, intentionally, willfully, and knowingly pulled the trigger of the weapon that projected the bullet that struck and killed Alan Morgan.

**3.** Because we conclude that Joyce Henderson's shooting of Alan Morgan is not an "occurrence" within the meaning of the Policy, it unnecessary to address the alterna-

tive basis for the district court's holding: that even if the shooting constituted an "occurrence" within the meaning of the policy, the intended or expected injury exclusion would preclude coverage under the Policy.

**4.** The Estate also argues that the defense of equitable estoppel and laches raise genuine issues of material fact in this case. However, we agree with the district court that this argument is a nonstarter because "[t]he Estate has not offered any evidence to show it can prove the elements of these defenses."