713 F.2d 1106
 AERO INTERNATIONAL, INC., a Mississippi corporation, Plaintiff,
v.
UNITED STATES FIRE INSURANCE COMPANY, a New York
corporation, Defendant.
GULF NATIONAL BANK, Plaintiff-Appellee,
v.
UNITED STATES FIRE INSURANCE COMPANY, a New York
corporation, Defendant-Appellant.
 No. 82-4245.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 6, 1983.
 
 Satterfield & Allred, Michael S. Allred, Thomas L. Kirkland, Jr., Jackson, Miss., for defendant-appellant.
 Mize, Thompson & Blass, W. Joel Blass, Alan E. Michel, Gulfport, Miss., for Gulf Nat.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before THORNBERRY, GEE and WILLIAMS, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 In August of 1981, one Jose Van Oostrum, a Swedish national of unsavory reputation, disappeared without a trace somewhere in the Caribbean. Vanished with him was the Cessna single engine high wing aircraft he piloted.[1] Such occurrences are not without precedent in that corner of the world. Stories are told of those who travelled there never to be heard of again--stories of intrigue, perhaps even of the supernatural. Ours, alas, is not one of those. Insurance, not intrigue, is our subject here.
 
 Facts
 
 2
 In August 1980, United States Fire Insurance Company ("U.S. Fire") issued an insurance policy to cover a fleet of eight airplanes owned by Aero International, Inc. ("Aero"). Aero was in the business of renting these aircraft to the public from its base in Gulfport, Mississippi. The policy provided liability coverage as well as "all risks" coverage for moving and non-moving loss or damage to the aircraft. Pursuant to a lienholder's endorsement, insurance coverage was extended to Gulf National Bank ("Gulf"), the mortgagee of the aircraft. Over time, Aero disposed of all the airplanes but one, which remained subject to Gulf's mortgage and U.S. Fire's insurance policy. The loss of that airplane is the subject of this lawsuit.
 
 
 3
 In early 1980, Aero had delivered its remaining airplane to Van Oostrum pursuant to a so-called lease/purchase contract with an organization called International Petroleum Research, S.A., that Van Oostrum purported to represent. Although the jury's verdict did not require findings on these issues, the evidence at trial tended to show that International Petroleum did not exist and that Van Oostrum was reputed to be a smuggler of illegal aliens from South America to the United States.
 
 
 4
 In August 1980, Van Oostrum filed a flight plan and took off in Aero's Cessna from his home base of Freeport, in the Bahamas. He flew to Nassau and then to Port-au-Prince, Haiti. In Haiti, Van Oostrum filed another flight plan showing Aruba in the Netherlands Antilles as his destination. Since his takeoff from Haiti, neither Van Oostrum nor the airplane has been seen again.
 
 
 5
 Relying upon certain exclusions in its policy, U.S. Fire contended that this loss was not covered and refused the demands of Aero and Gulf for payment. Aero and Gulf sued to recover under the policy. After trial, the jury returned a verdict for both plaintiffs and the district court denied U.S. Fire's motions for judgment non obstante veredicto and a new trial. A partial remittitur was granted.
 
 
 6
 U.S. Fire perfected an appeal from the judgments in favor of each plaintiff and Aero cross-appealed. Subsequently, Aero ceased to exist as a corporate entity and entered into a stipulation dismissing its cross appeal, vacating judgment in its favor, and entering judgment in favor of U.S. Fire. Therefore, the only issue before us is the propriety of the verdict and judgment in favor of Gulf.
 
 
 7
 U.S. Fire's first contention on appeal is that the district court erred in denying its motions for a directed verdict or judgment n.o.v. We have reviewed the record and for reasons to be stated conclude that the evidence did not entitle U.S. Fire to have the case taken from the jury. However, we agree with U.S. Fire that the district court's jury instructions were both erroneous as a matter of law and so internally inconsistent that a rational verdict cannot be envisioned. U.S. Fire is entitled to a new trial.
 
 I.
 
 8
 The principal legal question in this case is the scope of Gulf's coverage under the lienholder's endorsement to U.S. Fire's policy covering Aero's aircraft. Gulf argues that the endorsement is a separate contract between the insurance company and the mortgagee and that its coverage thereunder is limited only by the exclusions and limitations contained in the endorsement itself. The district court agreed, instructing the jury that the coverage exclusions contained in U.S. Fire's main policy limited Aero's coverage under the policy, but not Gulf's coverage under the endorsement. This view is erroneous. It is at odds with the plain language of the lienholder's endorsement and, contrary to Gulf's arguments, it is not required by Mississippi law.
 
 
 9
 The lienholder's endorsement was attached to the main insurance policy and provides in relevant part:
 
 
 10
 In consideration of an additional premium of $ INCLUDED, it is understood and agreed that;1. The insurance afforded by this Policy shall not be invalidated as respects the interest of the Lienholder by any act or neglect of the Insured; except that any change in title of ownership of the aircraft, conversion, embezzlement, or secretion by the Insured, or any person or persons in possession of the aircraft are not covered hereunder; provided however, that:
 
 
 11
 * * *
 
 
 12
 (b) the Lienholder shall notify the Company of any increase of hazard which comes to the Lienholder's attention, and if not permitted by the Policy, it shall be endorsed thereon, the Lienholder agreeing to pay any additional required premium, if the Insured shall fail to do so on demand of the Company. It is, however, further understood and agreed by the parties concerned that the protection afforded to the Lienholder by the terms of this Endorsement is limited to the perils covered under this Policy for which a specific premium charge has been made.
 
 
 13
 * * *
 
 
 14
 Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or warranties of the policy, other than as above stated.
 
 
 15
 (emphasis added).
 
 
 16
 These provisions unambiguously establish that the lienholder's endorsement operated to extend to the mortgagee whatever coverage was afforded by the main policy. The endorsement did not by its terms create a separate contract insuring different risks; it simply added a party to the original insurance contract. See Lakewood Bank & Trust Co. v. Security Ins. Co. of Hartford, No. CA3-80-1537-F (N.D.Tex. Dec. 1, 1981) (unreported district court decision construing substantially identical policy), aff'd, 690 F.2d 903 (5th Cir.1982).
 
 
 17
 The cases cited by Gulf do not require a different interpretation. Each is based upon a Mississippi statute requiring that "[e]ach fire insurance policy on buildings" contain a clause commonly known as a "union standard" mortgage clause. Miss.Code Ann. § 83-13-9 (1972); Hartford Fire Ins. Co. v. Associates Capital Corp., 313 So.2d 404, 407-08 (Miss.1975).[2] Under such a clause, the insurer's defenses against the insured are not available against the lienholder. Hartford Fire Ins., 313 So.2d at 407.
 
 
 18
 Section 83-13-9 is applicable only to fire insurance policies on buildings and their fixtures. Scottish Union & Nat'l Ins. Co. v. Warren Gee Lumber Co., 118 Miss. 740, 80 So. 9 (1918). Contrary to Gulf's suggestion, the recent Mississippi cases do no more than apply the statute in that context. See note 2, supra. They do not announce a general public policy that lienholder's endorsements in other types of policies should be construed as separate contracts, unlimited by any exclusion in the main policy. Mississippi courts have long recognized that insurance contracts are like all other contracts; where clear and unambiguous, they are to be enforced according to their terms as written. Aetna Casualty & Surety Co. v. Head, 240 So.2d 280, 282 (Miss.1970); Gotcher Eng'g & Mfg. Co. v. United States Fidelity & Guar. Co., 193 So.2d 115 (Miss.1966). Without an affirmative expression of an overriding public policy by the Mississippi courts or legislature, we are constrained to enforce the parties' agreement according to its plain meaning. As explained, the lienholder's endorsement extends the coverage of the main policy to Gulf, subject to the exclusions and limitations stated in the main policy.
 
 II.
 
 19
 U.S. Fire argues that it was entitled to a directed verdict or judgment n.o.v. based upon any one of three policy conditions or exclusions. To prevail, it must meet the familiar test of Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir.1969) (en banc) (footnote omitted):
 
 
 20
 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.
 
 
 21
 The first policy provision relied upon by U.S. Fire sets out the territorial coverage of the policy, which extends to the continental United States, Canada, Mexico, and the Bahamas. There was no conclusive evidence at trial of where the loss in this case occurred. The investigations and testimony of the Harrison County sheriff indicated that Van Oostrum left the Bahamas and travelled to Haiti, some 500 miles south of the territorial limit of the policy. The flight plan he filed in Haiti designated Aruba, located some 520 miles further south, as his next destination. Obviously, this evidence would support a strong inference that the aircraft was lost somewhere south of the territorial boundaries of policy coverage. Gulf argues, based upon the evidence of Van Oostrum's illicit occupation, that the jury was not bound to draw this inference because a reasonable jury could infer that the flight plan was false and that Van Oostrum actually took the airplane back inside the territorial limits of the policy. Standing alone, such an inference would be little more than speculation. However, it is supported by the following portion of a letter written by the Harrison County assistant district attorney to the plaintiffs' attorney and admitted into evidence:
 
 
 22
 An exhaustive investigation of this matter by our office and by the Harrison County Grand Jury reveals no criminal conduct by Jose Van Oostrum concerning this aircraft and our file is now closed. Our review of this case indicates the aircraft was probably destroyed in an accident in the Bahamas.
 
 
 23
 Although the conclusion of the district attorney and grand jury is qualified and the facts upon which it was based are not stated, the jury was certainly entitled to credit an official representation that an "exhaustive investigation" had indicated a "probabl[e]" explanation of the loss. A directed verdict or judgment n.o.v. on this territorial issue was not warranted.[3]
 
 
 24
 The second provision relied upon by U.S. Fire is an express exclusion of coverage for any loss or damage "while the aircraft is subject to bailment, lease, conditional sale, mortgage or other encumberance not specifically stated in the Declarations." The agreement between Aero and International Petroleum was not described in the declarations. However, an Additional Interest Endorsement specifically named International Petroleum as an operator of the aircraft to which liability coverage was extended. Further, the insurance agent that procured the policy testified that the representative of U.S. Fire with whom he dealt knew of the International Petroleum lease. From the confluence of these facts, the jury reasonably could have found that the lease was "specifically stated" in the declarations.
 
 
 25
 U.S. Fire's final asserted basis for a directed verdict or judgment n.o.v. is that the policy excludes coverage for any loss due to conversion by one in possession of the aircraft.[4] As evidence of conversion, U.S. Fire points to the facts that Van Oostrum had not paid Aero the August 1980 rental charge and that, prior to filing suit, Aero filed criminal charges against Van Oostrum for embezzlement by contract. However, Aero's representative testified that the criminal charges were filed because otherwise no police investigation could proceed. The record also shows that the aircraft disappeared in August 1980, that rental payments had been made through July 1980, and that Van Oostrum had paid the first and last month's rental payments in advance. From this evidence, the jury could reasonably conclude that the aircraft was not converted by Van Oostrum but instead was lost at sea.
 
 
 26
 The evidence in this case does not overwhelmingly support either party. Perhaps we would have drawn different inferences from some of the facts than did the jury, but that is not our task. There was enough evidence to support the verdict and the district court did not err in refusing to take the case from the jury.
 
 III.
 
 27
 Although we have concluded that U.S. Fire was not entitled to have the case taken from the jury, we agree with its alternative contention that the trial court's erroneous and conflicting jury instructions are grounds for a new trial.
 
 
 28
 We are at a loss to explain or understand the trial court's instructions in this case. On practically every material issue to be decided, the court issued instructions that stated diametrically opposite propositions of law; indeed, most of the conflicting instructions proposed by opposing counsel to reflect their differing views of the law appear simply to have been read to the jury seriatim. Presumably, the press of a busy trial docket contributed to this oversight. Unfortunately, the error is a costly one: a three-day trial has gone for naught.
 
 
 29
 The gravity of the conflicts in instructions is best exemplified by those regarding the territorial coverage of the policy; conflicting statements of both substantive law and burden of proof were made. The court first instructed the jury:
 
 
 30
 You are further instructed that the defendant, United States Fire Insurance Company, contends, as to the bank, that no insurance coverage and therefore no liability exists because at the time of the loss the subject aircraft was being operated in a geographical area which was outside the area specified in the Territorial Extension Agreement, that is, Endorsement No. II, of the policy. In this regard the jury is instructed that the defendant has raised this issue as an affirmative defense and as a matter of avoidance. Therefore the burden is on the defendant to prove by a preponderance of the evidence that Aero International, Inc., breached the contract of insurance when the aircraft was lost while operating in a geographical area which was outside the area specified in the Territorial Extension Agreement, Endorsement No. II, of the policy. If you find from a preponderance of the evidence, if any, that Aero International, Inc., in fact breached the contract when the aircraft in question was lost while operating in a geographical area outside the area specified in the Territorial Endorsement Agreement, No. II, in the policy, then, such a defense would be good as against Aero International, Inc., but not apply against Gulf National Bank. You are therefore instructed to disregard any evidence or issue concerning the geographical area in which the aircraft was operating at the time of the loss with respect to the issue of the defendant's liability, if any, to Gulf National Bank.
 
 
 31
 As has been explained, this is in part an erroneous statement of the law. It assumes that the policy exclusions are not applicable to the mortgagee under the lienholder's endorsement. A few pages further on, the record reveals a correct statement of the law on this issue:
 
 
 32
 You are further instructed that under the policy of insurance in question, the insurance coverage which was afforded to Aero International, Inc., as the insured, and Gulf National Bank, as the lienholder and loss payee, was subject to certain territorial limitations. The insurance afforded by the policy applied only to loss of the aircraft while the aircraft was kept and used within the continental United States of America, Canada, Mexico or the Bahama Islands, or en route between points within these places.
 
 
 33
 Therefore, if you find from a preponderance of the evidence that the aircraft was lost outside the territory within which the coverage was applicable, your verdict must be for the defendants. If you find from a preponderance of the evidence that the aircraft was lost in the Republic of Haiti or on the Island of Aruba or en route between Haiti and Aruba, plaintiffs would not be entitled to recover and your verdict must be for the defendant.
 
 
 34
 Thus, the jury was asked to follow absolutely contradictory statements of the central legal proposition in the case--the applicability of the main policy terms to Gulf.
 
 
 35
 Similar confusion was engendered regarding the burden of proof. In the first instruction on the territorial coverage issue discussed above, the jury was told that U.S. Fire bore the burden to prove the territorial location of the loss as an affirmative defense. A few moments later, it was told:
 
 
 36
 Now under the law of Mississippi, the rights of the plaintiffs arise under the insurance policy in effect as between the United States Fire Insurance Company and the Aero International, Inc., and under the terms of which Gulf National Bank was a loss payee. In order to recover from the defendant, United States Fire Insurance Company, on the insurance policy in question, the plaintiffs have the burden of proving by a preponderance of the evidence that the loss of the aircraft which is the subject of this suit was covered by the insuring agreements and conditions of the policy in question and occurred under circumstances which were not excluded from the territory of coverage.
 
 
 37
 In a case as close as this one, allocation of the burden of proof is crucial--oftentimes, dispositive. Therefore, the contradictory instructions on this issue are particularly prejudicial.
 
 
 38
 Similarly conflicting instructions were given regarding the other two principal policy exclusions relied upon by U.S. Fire: the exclusion for undisclosed leases and the exclusion of conversion losses. With respect to each, one instruction correctly stated the law; the other was based upon the theory that the exclusion did not apply to a lienholder. Strangely, the trial court adverted to this conflict in an aside to the jury in the midst of giving his instructions, but made no attempt to cure the error, leaving it to the jury to decide which rule of law to apply.[5] Conflicting instructions were also given regarding other significant issues in the case, including the effect of any negligence by Aero's insurance agent and the effect of certain statements made by Aero to U.S. Fire during the claim adjustment process.
 
 
 39
 U.S. Fire was entitled to have the critical issues bearing upon its liability "submitted to and answered by the jury upon a clear and proper charge." NMS Industries, Inc. v. Premium Corp. of America, Inc., 451 F.2d 542, 545 (5th Cir.1971). A new trial is the appropriate remedy for prejudicial errors in jury instructions. Id.; Phillips v. State Farm Mut. Auto. Ins. Co., 437 F.2d 365 (5th Cir.1971) (erroneous instruction regarding burden of proof in action on insurance policy). That is not to say, however, that post-verdict linguistic analysis by imaginative counsel will frequently be rewarded with a second bite at the apple. "The question on appeal is not whether an instruction was faultless in every respect, but whether the jury, considering the instruction as a whole, was misled.... Thus, only in those cases where the reviewing court has a substantial doubt whether the jury was fairly guided in its deliberations should the judgment be disturbed." Mid-Texas Communications Systems, Inc. v. AT & T, 615 F.2d 1372, 1390 n. 16 (5th Cir.) (citations omitted), cert. denied, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980); see generally Ware v. Reed, 709 F.2d 345, 347-48 (5th Cir.1983).
 
 
 40
 In this case, we have no doubts: no jury attempting to proceed on such instructions could have been expected to reach a rational verdict.[6] It is no answer to U.S. Fire's claims of prejudice to point out that at some point during the court's recitation correct statements of applicable law were made. Fortunately, cases where correct instructions were uniformly contradicted by incorrect ones are rare, but it is clear that this sort of error is not harmless:
 
 
 41
 These instructions stated the law correctly. But the mere giving them without recalling or explaining the instructions given on the court's own motion would not be likely to remove the impression already made. In order to render an error harmless, it must be made to appear clearly that the party complaining of it was not prejudiced.
 
 
 42
 The difficulty created by inconsistent or contradictory instructions on a material point is, first, that it is impossible for the jury to know which is to be their guide; and, secondly, it is impossible after verdict to ascertain which instruction the jury followed.
 
 
 43
 Detroit Edison Co. v. Knowles, 152 F.2d 422, 424 (6th Cir.1945) (quoting Standard Life & Accident Ins. Co. v. Sale, 121 F. 664, 669 (6th Cir.1903)); see also Chicago, Rock Island & P.R.R. v. Speth, 404 F.2d 291, 296 (8th Cir.1968) (effect of contradictory instruction is to nullify correct instruction); Pacific Greyhound Lines v. Zane, 160 F.2d 731, 737 (9th Cir.1947).[7]
 
 
 44
 The judgment of the district court is reversed, and the case is remanded for a new trial.[8] At that trial, the court shall instruct the jury in accordance with the principles we have discussed here. The court shall also determine the applicable burden of proof in accordance with Mississippi law, see note 3, supra, and instruct the jury accordingly, after affording the parties adequate opportunity to be heard on the issue.
 
 
 45
 REVERSED AND REMANDED.
 
 
 
 [1]
 "November-seven-six-one-Golf-Sierra."
 
 
 [2]
 See also Highlands Ins. Co. v. McLaughlin, 387 So.2d 118 (Miss.1980); National Security Fire & Casualty Co. v. Mid-State Homes, Inc., 370 So.2d 1351 (Miss.1979)
 
 
 [3]
 The evidence presented a jury question regardless of which party bore the burden to prove the territorial location of the loss. The district court issued conflicting jury instructions on the burden of proof issue. See part III, infra. Under Mississippi law, whether the territorial limitation is an affirmative defense or a precondition of coverage depends upon the construction given the policy terms and the parties' pleadings. Britt v. Travelers Ins. Co., 566 F.2d 1020, 1022 (5th Cir.1978). Compare Commercial Union Ins. Co. v. Byrne, 248 So.2d 777 (Miss.1971) with Lunday v. Lititz Mutual Ins. Co., 276 So.2d 696 (Miss.1973). We will not decide which party bears the burden of proof at this juncture. Because the parties have only touched upon the issue in this appeal, we think the better approach is for the district court to allocate the burden of proof as an initial matter on remand, when the further assistance of the parties will be possible
 
 
 [4]
 The main policy provides that coverage is not extended
 
 
 [7]
 Under Coverage F, to loss due to conversion, embezzlement or secretion by any person in possession of the aircraft under a bailment, lease, conditional sale, purchase agreement, mortgage or other encumbrance
 Similarly, the lienholder's endorsement provides:
 
 
 [1]
 The insurance afforded by this Policy shall not be invalidated as respects the interest of the Lienholder by any act or neglect of the Insured; except that any change in title of ownership of the aircraft, conversion, embezzlement, or secretion by the Insured, or any person or persons in possession of the aircraft are not covered hereunder
 
 
 [5]
 Regarding one of the policy exclusions, the court read the following requested instruction to the jury:
 This affirmative defense cannot be utilized by the defendant to defeat the claim of Gulf National Bank because an insurance company writing contracts of insurance with individual or corporate residents of the State of Mississippi may not lawfully limit insurance coverage for a mortgagee, such as Gulf National bank, by the insertion of qualifying and non-statutory language into the policy's standard mortgage clause.
 In an aside, the court then said:
 And, incidentally, I don't think we have any standard mortgage clause in Mississippi with respect to the airplane in suit. I think it's a matter of agreement of the parties, and that alone which controls under the common law which is applicable in the State of Mississippi.
 Having thus expressed doubt that the instructed theory comported with the law (it didn't), the court nevertheless continued to issue numerous further instructions based on it.
 
 
 [6]
 The record has preserved a telling indication of actual jury confusion. Shortly after deliberations began, the jury foreman sent the following handwritten note to the trial judge: "Your Honor: If proper can we look at the judge's orders to the jury[?]" The trial court passed over this opportunity to reconsider the instructions, cure its error and salvage the trial, choosing instead to answer in a single word: "No."
 
 
 [7]
 Neither is harmless error established by the fact that the jury returned a verdict for Aero, having been instructed that the policy exclusions applied fully to it as the principal insured. This fact provides no assurance that the jury applied the appropriate burden of proof. See Phillips v. State Farm, supra, 437 F.2d at 368 (erroneous instruction on burden of proof alone is reversible error). It also fails to establish that the jury, confronted with the logical conundrum revealed by this record, did anything more than guess out a verdict
 
 
 [8]
 Accordingly, U.S. Fire's other claims of error need not be reached