**ALLSTATE INSURANCE COMPANY, Plaintiff**

v.

**Rudy LEWIS, Administrator of the Estate of Alvin B. Johnson, Deceased, Intervenor.**

**Rudy LEWIS, Administrator of the Estate of Alvin B. Johnson, Deceased, Plaintiff**

v.

**Leon BLACKMON, Defendant**

and

**Allstate Insurance Company, Garnishee Defendant.**

Civil A. Nos. 3:93–cv–700WS, 3:94–cv–282WS.

United States District Court, S.D. Mississippi, Jackson Division.

March 30, 1995.

Wilburn Hyche, Rainer & Hyche, Brandon, MS, for Allstate Insurance.

Ross Robert Barnett, Jr., J. Tayloe Simmons, Jr., Barnett Law Firm, Jackson, MS, for Leon Blackmon.

Paul D. Snow, Law Offices of Paul Snow, Jackson, MS, for Rudy Lewis.

### MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court are the motions of the various parties for summary judgment pur-

suant to Rule 56,[1] Federal Rules of Civil Procedure. These two consolidated civil actions both spring from the same episode, namely Alvin B. Johnson's unfortunate death, caused by a bullet fired from a gun held by Leon Blackmon ("Blackmon"), the insured of Allstate Insurance Company ("Allstate"). In civil action number 3:93–cv–700WS, plaintiff Allstate seeks a declaratory judgment under Rule 57[2] of the Federal Rules of Civil Procedure exonerating it from any obligation to pay to the estate of Alvin Johnson ("Johnson") any of the proceeds of Allstate's policy of insurance issued to Blackmon. In civil action number 3:94–cv–282WS, Rudy Lewis, the administratrix of the estate of Johnson, filed a wrongful death action against Blackmon in the Circuit Court of the First Judicial District of Hinds County, Mississippi, after Blackmon pleaded guilty to voluntary manslaughter. Under a reservation of rights, Allstate provided a defense for Blackmon. On May 2, 1994, the state court entered a $100,000.00 judgment in favor of Lewis. The following day, Lewis filed her Suggestion for Writ of Garnishment action against Allstate in state court. Thereafter, Lewis was allowed to intervene in Civil Action No. 3:93–cv–700WS. Subsequently, Allstate removed the state garnishment action from state court to this court where it has been consolidated with Civil Action No. 3:93–cv–700WS. Allstate argues here that under the undisputed facts it is entitled to a grant of summary judgment in its favor. Included among the provisions of Allstate's policy of insurance with Blackmon is a Criminal Act Exclusion which purports to exclude from coverage any criminal acts committed by an insured which result in bodily injury to another. Allstate contends that this exclusion is clear, valid and precludes any recovery by the estate of Johnson against the Allstate policy since Blackmon, Allstate's insured, pleaded guilty to a criminal indictment for manslaughter in the death of Johnson. Rudy Lewis on behalf of the Johnson estate opposes Allstate's motion and has filed a cross-motion for summary judgment. This court, however, agrees with Allstate for the reasons which follow.

This court has jurisdiction of this lawsuit pursuant to diversity of citizenship, 28 U.S.C. § 1332,[3] all parties being diverse to each other.[4] Since this court's jurisdictional base is founded upon diversity of citizenship, this court is obligated to follow the substantive law of Mississippi, which is the situs of the events shaping this dispute. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, when the substantive law of Mississippi is clear, this court pursuant to *Erie* is required to apply it. On the other hand, when an issue of substantive law is not clear, or has not been addressed, this court must make an educated guess how

1. Rule 56(a) and (b) of the Federal Rules of Civil Procedure provides:

    (a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

    (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Rule 57 of the Federal Rules of Civil Procedure provides:

    The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C., § 2201, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate....

3. Title 28 U.S.C. § 1332 provides in pertinent part:

    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
    (1) citizens of different States; ...

4. The parties in the original action in this court were Allstate and Blackmon. Allstate is a corporation organized under the laws of the State of Illinois. Blackmon is an adult resident of Hinds County, Mississippi. The intervenor, Lewis, is an adult resident of Hinds County, Mississippi. Where jurisdiction of subject matter has once been acquired, federal courts have jurisdiction over intervenors and substituted parties. *East v. Crowdus,* 302 F.2d 645 (8th Cir.1962).

the Mississippi courts would rule on the issue. Over the years, the situation has been termed the "*Erie*-guess." All parties agree that this issue is one of first impression for Mississippi and that this federal court must resort to an "*Erie*-guess."

The procedural trail this court must follow in considering the Rule 56 motion is not a new one; rather, the procedural character of Rule 56 is well known. Rule 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered." *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that in response to a motion for summary judgment, the non-moving party must make a showing sufficient to establish an element essential to its case).

█ The key facts of this lawsuit are undisputed. On Christmas night 1992, Leon Blackmon discharged a firearm killing Alvin B. Johnson. A Hinds County, Mississippi, Grand Jury indicted Leon Blackmon for manslaughter under Miss.Code Ann. § 97–3–35 (1972 as amended).[5] On October 11, 1993, Leon Blackmon pleaded guilty to the charge of manslaughter. At the time of the shooting, Leon Blackmon had in force and effect a policy of homeowner's insurance with Allstate Insurance Company, which policy included the following exclusion:

**Losses we do not cover:**

**We** do not cover bodily injury or property damage resulting from:

a) A **criminal act** or omission; or

b) An act or omission which is criminal in nature and committed by an **insured person** who lacked the mental capacity to appreciate the criminal nature or wrongful-ness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law.

This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

If the above exclusion is valid, this court's task is simply to determine (1) whether a criminal act was committed by an insured, and (2) whether bodily injury to someone resulted therefrom. Unquestionably, Blackmon's act of discharging the firearm was criminal. Blackmon pleaded guilty to a manslaughter indictment in the case of *State of Mississippi v. Leon Blackmon*, Cause No. 93–1–417CRH, Circuit Court of the First Judicial District of Hinds County, Mississippi. That conviction is still valid, still of record. While the attorney for the Johnson estate argues that the facts of the shooting would show that Blackmon's trigger finger was accidentally nudged during a struggle with two other individuals, and that a jury should decide whether Blackmon's act was criminal, the fact remains that he has been convicted. That still-viable conviction is an adjudicated fact here which a civil jury would be obliged to respect. "[A] plea of guilty to a criminal charge of conduct material in the present case comes in against the party as an admission." *Dunham v. Pannell*, 263 F.2d 725, 728 n. 3 (5th Cir.1959).

So, if Allstate's Criminal Act Exclusion be valid under Mississippi law and is to be applied literally, this court's holding is certainly predictable: Blackmon admitted he killed Johnson; the act was criminal; Blackmon was insured under an Allstate policy of insurance which contained a criminal act exclusion; the Johnson estate, thus, cannot recover against the policy.

The question now is to determine whether under Mississippi law, this Criminal Act Exclusion is valid, or whether it offends public policy and should be construed other than literally. As this court stated earlier in this opinion, this question appears to be an issue

---

5. Mississippi Code Annotated § 97–3–35 provides that "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter."

of first impression in Mississippi, and this court must resort to an *"Erie*-guess."

First, this court finds that the Criminal Act Exclusion at issue is clear and unambiguous. The exclusion denies coverage for bodily injury or property damage resulting from the criminal act or omission of an insured. The policy further provides that "This exclusion applies regardless of whether the insured person is actually charged with, or convicted of, a crime." Clearly, the exclusion purports to exclude all coverage in these circumstances, no matter the character of the criminal act, no matter whether a formal conviction has been had, so long as there exists the proper nexus between the crime and the onset of injury.

■■■ It is a general rule of law in Mississippi that when an insurance contract is plain and unambiguous, it cannot be rewritten by the court. *Davenport v. St. Paul Fire and Marine Ins. Co.*, 978 F.2d 927 (5th Cir.1992), *and see Aero Intern. v. United States Fire Ins. Co.*, 713 F.2d 1106 (5th Cir.1983). Furthermore, without an affirmative expression of an overriding public policy by the Mississippi courts or legislature, this court is constrained to enforce the agreement according to its plain meaning. *Id. Aero Intern.*, at 1109. In *Foreman v. Continental Cas. Co.*, 770 F.2d 487 (5th Cir.1985), the Court stated that "no rule of construction requires or permits the court to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligation where the provisions of the policy are clear. Under Mississippi law, '... insurance contracts, like all other contracts, where clear and unambiguous, must be construed exactly as written.' " *Id.* at 489.

To escape the thrust of an "as-written" construction premised on lack of ambiguity, the Johnson estate relies upon holdings in *Tower Ins. Co. v. Judge*, 840 F.Supp. 679 (D.Minn.1993), where the court addressed similar criminal exclusion act provisions and held them to be against public policy and in need of judicial modification to conform to the reasonable expectation of the insureds. In *Tower*, the heirs of Christopher M. Meyer brought a wrongful death suit against Richard B. Balster, John B. Judge, Jacen J. Axelrod, and Chad A. Mann following the electrocution death of their son. Meyer was electrocuted when Balster, Judge, Axelrod, and Mann attempted to awaken him by jolting him with electrical currents. Criminal charges were brought against Judge, Balster, and Mann, all of whom pleaded no contest to second degree reckless homicide, endangering safety by use of a dangerous weapon, and battery. After the criminal action culminated, Meyer's estate brought suit against Balster and Judge. Balster and Judge, both of whose parents had homeowners' insurance, tendered the defense of the wrongful death action to their respective insurance companies. 840 F.Supp. at 683.

The insurance companies undertook to defend Balster and Judge in the wrongful death action under a reservation of rights. Both insurance companies filed declaratory judgments seeking declarations that their policies excluded coverage for Meyer's death. *Id.* at 685. The Balsters were insured by Secura Insurance Company ("Secura"). The Balsters' original policy with Secura specifically excluded "bodily injury ... which is expected or intended by the insured." After issuing a policy with that exclusion to the Balsters, Secura amended its policy to provide an exclusion for bodily injury that "... (3) results from the criminal acts of an insured."

The Minnesota Court refused to apply the exclusion and concluded that in that case the "denial of coverage would conflict with the reasonable expectations of the insureds." *Id.* at 693. The Court also stated that public policy favored a narrow construction of the criminal act exclusion. *Id.* "This Court is convinced that it would be bad policy to find that the exclusion applies in this case just because the state of Wisconsin decided to pursue criminal charges." *Id.*

In footnote 7, the Court also noted that the criminal act exclusion was added to the Balsters' insurance policy by way of amendment. The Court stated:

> In Minnesota, when an insurer reduces coverage, the insurer has a duty to point out the reduction in coverage to the insured and offer to explain to the insured the significance of the changes. An insur-

er should not be able to take advantage of hidden and unexplained gaps in coverage created by amendment to the policy. If the insurer does not adequately fulfill its duty of disclosure, any question of coverage shall be determined in accordance with the terms of the original policy prior to the amendment. In this case, there is no evidence that Secura made any effort to explain, much less point out, to the Balsters the reduction in their coverage. (citations omitted)

*Id.* at 693.

The plaintiff also cited *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 571 N.Y.S.2d 429, 574 N.E.2d 1035 (1991), *Country Mutual Ins. Co. v. Duncan*, 794 F.2d 1211 (7th Cir.1986), and *Green v. Allstate Ins. Co.*, 177 A.D.2d 871, 576 N.Y.S.2d 639 (3 Dept.1991), for similar instances where courts have construed provisions in insurance policies for the benefit of the insured.

This court, taking an *Erie* -guess, holds that the public policy holdings in *Tower* would not, in this circumstance, enjoy the same vitality and vigor under Mississippi law. This court recognizes that there are circumstances where public policy considerations have moved Mississippi courts to set aside or rewrite clauses in insurance policies. *See Brown v. Blue Cross Blue Shield Miss.*, 427 So.2d 139 (Miss.1983); *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658 (Miss.1994); and *In re Koestler for Benefit of Koestler*, 608 So.2d 1258 (Miss.1992).

The Court in *Brown* determined that although the insurance contract was a group policy made between the employer and the insurer and was cancelled pursuant to an agreement between those two, that did not relieve the insurer from all obligations to the employees insured under the policy who relied on the policy then in full force and effect and expected hospital and medical benefits thereunder, and who were, as a result of said reliance, denied any opportunity to obtain insurance elsewhere. It should be noted that in *Brown*, while the employer purchased the group policy, the policy was purchased specifically for its employees, including Jerry Brown and his dependent wife, Linda L. Brown. The distinctions between *Brown* and

the case at bar are numerable; however, the most important is that *Brown* involved questions pertaining to the first party coverage. The deceased in the case at bar had no reasonable expectation of coverage under the terms of the policy. The policy at issue was purchased by Blackmon. The premium charged was based on the risk involved which was based on the exclusions set forth therein. Insurance policies are privately made contracts and except as limited by public law, Mississippi courts respect the right of the insurer and the insured to contract freely with one another. *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658 (Miss.1994), and *In re Koestler for Benefit of Koestler*, 608 So.2d 1258 (Miss.1992). In *Koestler* and *Nationwide*, the issue was the effect of policy provisions applied against the uninsured motorists statute. In each case, the Court considered public policy arguments asserted in light of what the legislature had required. In our particular case, there is no legislative restriction on the terms and conditions of the criminal act exclusion in the homeowners' policy at issue. Hence, this court is not persuaded that these case authorities show that Mississippi is prepared to extend a public policy argument to the criminal act exclusion at issue, where the dispute is waged by a third party to the policy who had no reasonable expectation of coverage.

Rather, this court is convinced that in this instance, the Mississippi courts would follow the dictates of *Allstate v. Norris*, 795 F.Supp. 272 (S.D.Ind.1992), which appears to be the only reported case involving the exact same policy and clause at issue. The facts of *Norris* are as follows. In *Norris*, the insured was fired upon by an unidentified man. The gunshots erupted after the two engaged in an argument in front of the insured's home. The insured escaped injury by running into his home. When he re-emerged, the insured had his .30 caliber, semi-automatic rifle which was loaded with twenty rounds of ammunition. The insured began shooting in the direction of the unidentified man. The unidentified man was not hit, but two other people in a nearby house were struck.

The insured was subsequently arrested and charged with two counts of attempted

murder and, by amended information, a third count of felony criminal recklessness. Norris entered a plea of guilty to the charges and was sentenced to eight years in prison. Soon thereafter, one of the shooting victims, Jeana Duane, and her mother brought suit against the insured seeking damages for assault and battery, mental and emotional distress, and negligence. That lawsuit prompted Norris' homeowner's liability insurer, Allstate, to file an action seeking a declaration that it was not liable under Norris' homeowner's policy for any damages suffered by the shooting victim and her mother. The court observed that it was unable to find any cases which "have held that insurance policies as a matter of public policy cannot exclude coverage for injuries resulting from unintentional criminal acts." *Id.* at 276. The court in *Norris* then noted that in other jurisdictions such exclusions had been regularly upheld. The court also stated that it was unable to find any decision which invalidated, on public policy grounds, an exclusion for injuries caused by "less-than-intentional conduct." *Id.* Finding no public policy argument against the application of the criminal act exclusion, the court in *Norris* concluded that the policy must be enforced according to its terms.

The Mississippi Supreme Court has from time to time addressed the issue of public policy involving first party insurance coverage (i.e., uninsured motorist and hospitalization); however, it appears that there are no cases which have addressed a public policy argument regarding homeowners' liability coverage which is third-party liability coverage. In this case, the question is whether a stranger to the contract has a right to claim an extension of coverage beyond that which the parties to the agreement contemplated both by the express language of the policy and the premium charged. To hold that the criminal act exclusion as set forth in the policy means, by public policy or otherwise, something other than its literal interpretation which clearly and unambiguously excludes coverage under these circumstances, would be to rewrite the contract in contravention of the agreement of the parties to the contract.

Accordingly, based on the foregoing findings and conclusions, this court finds that Allstate's motion for summary judgment is well taken and should be and is hereby granted, and Allstate is entitled to a declaratory judgment relieving it of any liability on the subject insurance policy. Contrariwise, this court finds that the cross-motion for summary judgment of Rudy Lewis, Administratrix of the Estate of Alvin B. Johnson, deceased, must be denied. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED.