**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-60700
(Summary Calendar)

ALFA INSURANCE CORPORATION,

Plaintiff-Appellee,

versus

CAROL WALDEN, As Next Friend
of Kim Walden, a Minor

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
(3:95-CV-284-BrN)

May 28, 1997
Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellants, Carol Walden, as next friend of Kim Walden, a minor, and James G. Jones

(collectively referred to as "Appellants"), appeal the district court's grant of a declaratory judgment

in favor of Alfa Insurance Corporation ("Alfa"), arguing that the criminal acts exclusion contained

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

in the Alfa auto insurance policy in question is ambiguous and contrary to public policy. For the following reasons, we affirm.

## I.   BACKGROUND FACTS AND PROCEDURAL HISTORY

Appellants and Alfa stipulated to the following facts:

On or about June 23, 1994, Kim Walden ("Walden"), a minor, was seriously injured when the car she was driving was struck by a car driven by James G. Jones ("Jones"). Jones was being pursued by Hinds County Sheriff's officers in a high-speed car chase following the commission of a burglary. At the intersection of Springdale Road and the I-20 West interchange, Jones ran through a red light and collided with two other vehicles. Jones later confessed his involvement in the burglary and that he had used "crack" cocaine immediately prior to the burglary attempt. Subsequently, Jones pled guilty to burglary and driving under the influence ("DUI").

The car Jones was driving is registered and insured in the name of his father, James J. Jones. Under the terms of the policy, Jones is a "covered person." The insurance policy, issued by Alfa, expressly provides:

> We do not provide liability coverage for:
>
>> any liability arising out of the use of a car
>> in connection with the commission of or attempt to
>> commit a criminal act.

In response to the aforementioned accident, Alfa filed a declaratory judgment action naming Kim Walden, by and through her next friend, Carol Walden. Both parties filed simultaneous motions for summary judgment. The district court ruled in favor of Alfa and from that ruling, Appellants appeal.

## II.   DISCUSSION

2

We review a grant of summary judgment under the parameters established by Fed. R. Civ. P. 56. Summary judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. C.V.. P. 56. "We review a grant of summary judgment *de novo*, applying the same standard used by the district court, and in reviewing the facts, we draw all inferences most favorable to the party opposing the motion." *Mulberry Square Productions, Inc. v. State Farm Fire and Casualty, Co.*, 101 F.d 414 (Th Cir. 1996).

Since this is a diversity case, we apply the substantive law of Mississippi to this insurance dispute. *Id*. at 420. We recognize the state of Mississippi has held that in construing an insurance contract, courts must adhere to the plain language of the contract as written, provided there is no ambiguity. *McFarland v. Utica Fire Ins. Co*., 814 F.Supp. 518, 523 (S.D. Miss. 1992); *See also Foreman v. Continental Cas. Co*., 770 F.2d 487, 489 (5th Cir. 1985)); *Aero Int'l, Inc. V. United States Fire Ins. Co.,* 713 F.2d 1106, 1109 (5th Cir. 1983). However, in cases where the contract is ambiguous, the contract is construed against the insurer. *McFarland,* 814 F.Supp. at 525. Furthermore, Mississippi courts have expressly stated that "no rule of construction requires or permits the court to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear." *Foreman*, 770 F.2d at 489.

The Mississippi courts, thus far, have not spoken directly to the issue before this court, so we must make an "*Erie*-guess" as to how the Mississippi Supreme Court would rule concerning the instant policy's coverage. *See United Parcel Service, Inc. v. Weben Industries, Inc.*, 794 F.2d 1005, 1008 (5th Cir. 1986). For guidance, we look to *Allstate Ins. Co. v. Lewis*, 918 F.Supp. 168 (S.D.

3

Miss. 1995), which addresses a very similar criminal acts exclusion in a homeowner's insurance policy.

In *Lewis*, the insured discharged a firearm killing another man. The insured was indicted by a grand jury for manslaughter and subsequently pled guilty. At the time of the killing, the insured had in full force and effect a homeowner's policy issued by Allstate. The executor of the decedent's estate brought suit against the insured seeking damages under the policy. The policy's criminal acts exclusion expressly provided,

> We do not cover bodily injury or property damage resulting from: (a) a criminal act or omission; or (b) an act or omission which is criminal in nature and committed by an insured person who lacked the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law.

In resolving this matter, the district court was forced to make an "*Erie*-guess" as to whether a criminal acts exclusion in the homeowner's liability policy was valid, as well as determine whether that same exclusion was adverse to public policy.

The *Lewis* court held that the exclusion was clear and unambiguous, excluding "all coverage . . . no matter the character of the criminal act, no matter whether a formal conviction has been had, so long as there exists the proper nexus between the crime and the onset of injury." *Id.* at 171. Thus, the court concluded that since the clause was plain and unambiguous, the court was "constrained to enforce the agreement according to its plain meaning" and had no power to rewrite the contract since there had not been an expression of "an overriding public policy by the Mississippi courts or legislature." *Id.*

4

In reading the criminal acts exclusion in the automobile liability policy executed between James J. Jones and Alfa, we agree that the language is clear and unambiguous. The language of the exclusion indicates that it is only applicable when (1) a covered person uses the car in connection with the commission of or an attempt to commit a crime, and (2) liability arises out of such use of the car. Thus, both elements of the exclusion must be satisfied for the exclusion to apply.

In the instant case, Jones, a covered person, admitted that at the time of the accident, he was under the influence of "crack" cocaine and was fleeing the scene of a burglary in which he had participated. It is readily apparent that based upon these facts, Jones' liability arises out of the use of his vehicle in connection with the commission of that burglary. The exclusion clause was therefore triggered.

On appeal, appellants urge that Alfa's criminal acts exclusion is an intentional acts exclusion, and as such Alfa is liable for the injuries sustained by Walden in the automobile accident because there was no intentional criminal act involving the use of the car. We disagree.

Alfa's insurance policy has a separate clause that specifically excludes damage resulting from intentional acts from coverage. Appellant's argument that the criminal acts exclusion is only applicable to intentional criminal acts would require us to second guess the drafters of Alfa's insurance policy and conclude that two clauses are nothing more than meaningless repetition. As stated previously, our interpretation of an insurance contract is limited to the plain language of the contract as written. *McFarland et al., supra*. A rudimentary reading of the policy reveals the drafters intended the two clauses be read independently, one excluding losses resulting from intentional acts and the other excluding losses resulting from criminal acts. Furthermore, we conclude that Alfa's criminal acts exclusion is all-encompassing, terminating Alfa's liability for general intent

5

crimes, as well as specific intent crimes. *See Allstate Insurance Co. v. Juniel*, 931 P.2d 511, 515 (Colo. Ct. App. 1996); *Allstate Ins. Co. v. Norris*, 795 F.Supp. 272 (S.D.Ind. 1992); *Allstate Ins. Co. v. Sowers*, 776 P.2d 1322 (Or. 1989). It does not require the covered person to have "intended to cause injury" or even know how the accident that caused the injury occurred. *Id*. Thus, appellant's argument that the exclusionary clause is not triggered because the criminal act must be accompanied by specific intent is nothing more than a fundamental misapprehension.

Alternatively, appellants assert that the criminal act (the burglary) that Alfa seeks to utilize to exclude recovery was complete before the accident occurred. But to satisfy the exclusion, the insurer need not show that the accident (and resulting liability) occurred while the vehicle was being used <u>during</u> the commission of a crime; it need only show that the automobile was being used <u>in connection with</u> the commission of a crime. Certainly Jones' use of the vehicle in fleeing from a burglary in an attempt to escape the police meets this test.[2]

The summary judgment rendered by the district court is AFFIRMED.

---

[2] We need not decide whether driving the vehicle while under the influence of drugs is sufficient to trigger the exclusion.